**RECORD NO. 21-1565**

𝕴𝖓 𝕿𝖍𝖊

# United States Court Of Appeals
## For The Fourth Circuit

# TAMMY BANDY,

*Plaintiff - Appellant,*

v.

# CITY OF SALEM, VIRGINIA,

*Defendant - Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT ROANOKE**

_____

**BRIEF OF APPELLANT**

_____

**Terry N. Grimes**
**TERRY N. GRIMES, ESQ., PC**
**320 Elm Avenue, SW**
**Roanoke, VA 24016**
**(540) 982-3711**
**tgrimes@terryngrimes.com**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 21-1565      Caption: Tammy Bandy v. City of Salem, Virginia

Pursuant to FRAP 26.1 and Local Rule 26.1,

Tammy Bandy
(name of party/amicus)

who is _____ Appellant _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.   Does party/amicus have any parent corporations?   ☐YES ☑NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐YES ☑NO
     If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?     ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/Terry N. Grimes          Date:    May 18, 2021

Counsel for: Appellant

Print to PDF for Filing

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES .................................................................. ii

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE ..............................................................1

SUMMARY OF ARGUMENT .............................................................5

ARGUMENT .......................................................................................6

    Standard of Review..........................................................................6

    District Court Opinion .....................................................................7

        i.     But-For Causation ...............................................................8

        ii.    Direct Evidence.................................................................10

        iii.   Circumstantial Evidence ..................................................12

        iv.   Bandy is Entitled to an Inference of Discrimination Under *Reeves*....................................................................15

        v.    Subjective Criteria............................................................22

CONCLUSION...................................................................................23

REQUEST FOR ORAL ARGUMENT ...............................................24

CERTIFICATE OF COMPLIANCE...................................................25

i

# TABLE OF AUTHORITIES

**Page(s):**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ................................7

*Arthur v. Pet Dairy*,
   593 F. App'x 211 (4th Cir. 2015) ...................................................7, 10, 18, 19

*Bostock v. Clayton Cty*,
   108 S. Ct. 1731, 207 L. Ed. 2d 218 (2020)...................................................8, 9

*Brosseau v. Haugen*,
   543 U.S. 194, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) ............................7

*Burns v. AAF-McQuay, Inc.*,
   96 F.3d 728 (4th Cir. 1996) ..........................................................................21

*Burrage v. United States*,
   571 U.S. 204, 134 S. Ct. 881, 187 L. Ed. 715 (2014) ....................................8

*Carter v. Ball*,
   33 F.3d 450 (4th Cir. 1994) ..........................................................................15

*Cole v. Family Dollar Stores of Md., Inc.*,
   811 F. App'x 168 (4th Cir. 2020)....................................................7, 10, 18, 19

*Educ. Media Co. at Va. Tech, Inc. v. Insley*,
   731 F.3d 291 (4th Cir. 2013) ..........................................................................6

*Figueroa v. Pompeo*,
   923 F.3d 1078 (D.C. Cir. 2019)................................................................22, 23

*Granet v. Presidio*,
   2020 U.S. Dist. LEXIS (E. D. Va. Oct. 20, 2020) .......................................20

*Gross v. FBL Fin. Servs., Inc.*,
   557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009) ............................8

*Ham v. Wash. Suburban Sanitary Comm'n.*,
  158 Fed. App'x 457 (4th Cir. 2005) ............................................................21

*Hope v. Pelzer*,
  536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) ............................7

*Loeb v. Textron, Inc.*,
  600 F.2d 1003 (1st Cir. 1979)........................................................................11

*Lovelace v. Sherwin-Williams Co.*,
  681 F.2d 230 (4th Cir. 1982) ........................................................................11

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)........................................................................................11

*Reeves v. Sanders Plumbing Products, Inc.*,
  530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ............7, 15, 21, 22

*Saucier v. Katz*,
  533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) ............................7

*Spagnuolo v. Whirlpool Corp.*,
  641 F.2d 1109 (4th Cir. 1981), *cert. denied*,
  454 U.S. 860, 70 L. Ed. 2d 158, 102 S. Ct. 316 (1981) ................................11

*St. Mary's Honor Center v. Hicks*,
  509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) .....................15, 22

*Tolan v. Cotton*,
  572 U.S. 502, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014) ............................7

*Tuttle v. Metropolitan Government of Nashville*,
  474 F.3d 307 (6th Cir. 2007) ........................................................................21

*Westmoreland v. TWC Admin., LLC*,
  924 F.3d 718 (4th Cir. 2019) ..........................................................................8

*Wilhelm v. Blue Bell, Inc.*,
  773 F. 2d 1429 (4th Cir. 1985), *cert. denied*,
  475 U.S. 1016 (1986)................................................................................10, 11

iii

**Statutes:**

28 U.S.C. § 1291 ...........................................................................1

29 U.S.C. § 621, *et seq*...........................................................1, 8, 11

29 U.S.C. § 623(a)(1)...............................................................8

**Rules:**

Fed. R. App. P. 4(a)(1)(A) ..........................................................1

Fed. R. Civ. P. 56 ..............................................................1, 9, 12

**Other Authorities:**

Bell, Daniel L. (1989)
  *Watson and Subjective Hiring Practices: The Continuing Saga of*
  *Industrial Psychology, Title VII and Personnel Selection*,
  Akron Law Review 588, Vol. 22, Issue 4, Article 5 ....................................22

Webster's New Collegiate Dictionary, G. & C. Merriam Co. (1979)......................9

www.salemva.gov/Departments/Human-Resources/Job-Opening#job247,
  visited August 2, 2021 ..................................................................14

## JURISDICTIONAL STATEMENT

Tammy Bandy filed suit in the United States District Court for the Western District of Virginia against defendant the City of Salem, Virginia for age discrimination in violation of Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. (JA 6-10).  Bandy appeals the district court's final order of March 19, 2021 granting the City's Rule 56 motion for summary judgment (JA 553).  This Court has jurisdiction pursuant to 28 U.S.C. § 1291, which provides that "[t]he courts of appeals … shall have jurisdiction of appeals from all final decisions of the district courts of the United States."  Bandy timely filed a notice of appeal on April 19, 2021 (JA 554-55).  *See* Fed. R. App. P. 4(a)(1)(A).  This appeal follows.

## STATEMENT OF THE ISSUES

Did the district court err by granting the City's motion for summary judgment?

## STATEMENT OF THE CASE

When Wendy Delano (age 53) (JA 216) was promoted to Director of the Salem Civic Center Director in 2016 (*see*, JA 219-21), she began to hire and promote young men to fill available openings in a staff of approximately 20 employees.  For example, after promoting Hank Luton, age 38 (JA 268) to assistant director (JA 272.1) and his best friend (JA 274-75, 290; 316), Chris Fischer, age 39 (JA 316*)* to booking coordinator (JA 317),[1] Delano next attempted in February 2018 to hire

---

[1] The booking coordinator job involves booking banquet rooms at the civic center

Hank's wife's young cousin, then 22-year-old Jefferson Lee (JA 270, 349.1, 482). Things did not go as Delano had planned. After the interview panel found that Lee "[d]oes not meet *minimum* education/experience requirements[2]" (JA 354) [Emphasis added], he failed to get the job. The panel at the time consisted of Wendy Delano, Hank Luton, and the City's Human Resources director Beth Rodgers (JA 363). Undeterred, Delano knew therefore that to have any chance at hiring Lee for the next available opening, she would have to exclude HR from the hiring process. And that's exactly what she did.

When the booking coordinator job next became available just a few months later in January 2019, Lee again applied for the position. (JA 350-351). Tammy Bandy, age 52, was already working at the civic center in the ticket office at the time, and as she had performed the duties of the booking coordinator previously, she also applied for the job. (JA 413, 415, 417, 420). This time, Lee reworked his application letter and added the fact that he was "young" and "the age of 24," (JA 367).[3] Having

for "lunches and dinners and Rotary and Kiwanis and [ ] bridal showers [and] receptions." (JA 346; *see also*, JA 224). Booking the banquet rooms is "much easier now … because it's all on line now." (JA 420.1- 420.2).

[2] Out of nineteen applicants, Lee was one of only three applicants who received a score of "1" - the lowest possible score. (JA 481). And, in his application cover letter dated February 13, 2018, Lee made no mention of his youth or age. (JA 482).

[3] Both Lee's age and the date of the letter are wrong. According to Lee, his date of birth is August 7, 1995 (JA 342). He was therefore 23-years-old — not 24 as stated in the letter — when he applied for the booking coordinator job in January 2019 (*see*, JA 367). Lee also noted at deposition that the date of the letter was incorrect and should have been January 14, 2019, not "2018:" "I assume that it was just a typo on my end." (JA 351).

learned her lesson after the City failed to hire Lee earlier, this time Delano excluded HR from the interview panel (Rodgers: "I was not involved at all in the whole process" (JA 359)).  Both HR Director Beth Rodgers and Assistant Director Kristie Jordan testified that the hiring process for the City of Salem is supposed to be fair and unbiased (JA 357; JA 459-60).  Instead, Delano chose herself, Lee's cousin Hank Luton,[4] and Hank's best friend, Chris Fischer, to "interview" Lee.  Delano testified,

> Q     I want to ask you about the hiring process for the booking coordinator position. Who was involved in the hiring process?
> A     Myself, Hank Luton, and Chris Fischer.
> Q     And who decided who would be involved in the hiring process?
> A     *I did.*

(JA 226-27) [Emphasis added].  It is difficult to imagine a more biased panel. Having stacked the deck sharply in Lee's favor, he of course got the job.  (JA 354; JA 232).

Afterward, as noted by the district court, on February 14, 2019, Luton told Bandy that "[al]though her interview went well, Salem hired Lee *because* he is 'much younger' (approximately 25 years old) and 'more energetic.'" (JA 536).  *See also*, JA 429: "*we* hired my wife's cousin; he's *much younger* and more energetic" and JA 483: "Jefferson Lee is the chosen one. Hank told me today, "they chose him

---

[4] When asked whether he told Lee about the job opening, Luton responded, coyly, "I don't recall if I did or not. … *I knew that he was going to apply*."  (JA 276) [Emphasis added].

*because* he was much younger and more energetic." [Emphasis added].[5]  When Bandy spoke with the person who hired her, former civic center director Carey Harveycutter (JA 437-38), Harveycutter told Bandy plainly, "that is age discrimination and you need an attorney." (JA 438).

Next, when Bandy spoke with Delano on February 12, 2019 about Luton's assertion that Lee was hired because of his age, Delano apologized and stated, "to be honest with you, that was probably his honest answer—in his mind…I mean there is no doubt in my mind that what you told me is what—that's probably how he felt." (JA 214, at 18:49).  Delano also told Bandy that she did not get the job because she (1) had done the job before (Bandy had performed the booking coordinator duties previously while working for then Civic Center Director Carey Harveycutter) (JA 377-79, 434); (2) had proven to be a reliable employee; (3) had shown that she could learn different computer programs since she had learned the Ticketmaster program at the civic center; (4) that the civic center would not want her to have the job because she already worked there; and (5) that they had received 30 applications, interviewed only six persons including Bandy, and that Bandy was only one of four persons with

---

[5] The complete text of both quotes is, "He said, we hired my wife's cousin; he's much  younger and more energetic, and I looked at him with my jaw hung open, and he got a deer in the headlights look, and he said, I mean, he is fresh out of college with a sports degree, and he walked across the lobby" (JA 429), and "Jefferson Lee is the chosen one.  Hank told me today, they chose him because he was much younger and more energetic then a quick back paddle of he is fresh out of college" (JA 483).

the proper skill set. (JA 446-47). Bandy was dumbfounded because those should have been reasons to install her as booking coordinator and not Lee.  (JA 447).

Bandy resigned shortly thereafter.  When Luton learned that Bandy was resigning, he walked up to Bandy at work, "put his arm around [her] shoulder with a big grin on his face" and said, "I heard you are leaving us," then "turned around and walked out." (JA 435). Bandy's supervisor, Stephanie Sowder, witnessed this and observed, "that was a little uncalled for." (*Id*.).  Rubbing more salt in the wound, the next day Luton again approached Bandy and asked sarcastically in the presence of her supervisor, "are we having a celebration party" to celebrate Bandy's resignation (*Id*.).

Bandy timely filed a charge of discrimination with the Equal Employment Opportunity Commission (JA 451-52), received a notice of right to sue (JA 453), and timely filed suit in the district court.

## SUMMARY OF ARGUMENT

This appeal challenges an award of summary judgment to an employer in a case that presents direct and circumstantial evidence of age discrimination.  After Salem Civic Center employee Tammy Bandy (age 53) was not installed as banquet room booking coordinator in favor of newly hired 23-year-old Jefferson Lee, a member of the hiring committee told her that the city of "Salem hired Lee because he is 'much younger' and 'more energetic.'" (See JA 483). Afterward, the Civic

Center Director apologized for Luton's comment and told Bandy that she did not get the job because she (1) had performed the booking coordinator duties previously (while working for a previous director); (2) had proven to be a reliable employee; (3) had proficient computer skills; (4) that the civic center would not want her to have the job because she already worked at the civic center; and (5) that they had received 30 applications, interviewed only six persons including Bandy, and that Bandy was only one of four persons with the proper skill set. (JA 446-47). Bandy was dumfounded because those should have been precisely the reasons to promote her, not hire Lee. (JA 447).

In a case that presents direct and circumstantial evidence of age discrimination, the district court erred by weighing the evidence and awarding summary judgment to the employer. Bandy therefore asks this Court to reverse the judgment of the district court and remand for further proceedings.

## ARGUMENT

### _Standard of Review_

An appellate court reviews "a district court order granting summary judgment _de novo_, viewing the evidence in the light most favorable to the non-moving party." _Educ. Media Co. at Va. Tech, Inc. v. Insley_, 731 F.3d 291, 297 (4th Cir. 2013) (citation omitted). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

judge." *Reeves v. Sanders Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000) (citation omitted); *see also Tolan v. Cotton*, 572 U.S. 502, 134 S. Ct. 1861, 1867-68, 188 L. Ed. 2d 895 (2014) (reversing summary judgment where "the court below credited the evidence of the party seeking summary judgment and failed properly to acknowledge key evidence offered by the party opposing that motion").

The Supreme Court in *Tolan* reiterated:

> [C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. *See Brosseau v. Haugen*, 543 U.S. 194, 195 n.2, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam ); *Saucier [v. Katz*, 533 U.S. 194,] 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 [(2001)]; *Hope [v. Pelzer*, 536 U.S. 730,] 733 n.1, 122 S. Ct. 2508, 153 L. Ed. 2d 666 [(2002)]. This . . . is simply an application of the more general rule that a "judge's function" at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson [v. Liberty Lobby, Inc.]*, 477 U.S. [242,] 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 [(1986)].

*Tolan*, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014).

<u>District Court Opinion</u>

Relying heavily on this Court's unpublished opinions in *Cole v. Family Dollar Stores of Md., Inc.*, 811 F. App'x 168 (4th Cir. 2020) (unpubl.) and *Arthur v. Pet Dairy*, 593 F. App'x 211 (4th Cir. 2015) (unpubl.), the district court found that "Bandy cannot show that age discrimination was the but-for cause of the decision not to promote her" and granted summary judgment for the City. As will be shown, that ruling is error.

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  An employee who alleges that her employer violated this prohibition "must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009).  *See also, Westmoreland v. TWC Admin., LLC*, 924 F.3d 718 (4th Cir. 2019) (affirming judgment for plaintiff in an age discrimination case).

    i.    But-For Causation

To begin, the Supreme Court made clear in *Burrage v. United States*, 571 U.S. 204, 134 S. Ct. 881, 888-89, 187 L. Ed. 715 (2014), that 'but-for' causation does not require a showing that an impermissible motive was the sole cause of the challenged action.  More recently, in *Bostock v. Clayton Cty*, 108 S. Ct. 1731, 1739, 207 L. Ed. 2d 218, 232 (2020), the Supreme Court reiterated that "but for" does not mean sole cause: "Often, events have multiple but-for causes… So, for example, if a car accident occurred *both* because the defendant ran a red light and because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision." *Id.* [Emphasis in original].  Justice Gorsuch, writing for the majority, also gave the following example:

8

What the employers see as unique isn't even unusual. Often in life and law two but-for factors combine to yield a result that could have also occurred in some other way. Imagine that it's a nice day outside and your house is too warm, so you decide to open the window. Both the cool temperature outside and the heat inside are but-for causes of your choice to open the window. That doesn't change just because you also would have opened the window had it been warm outside and cold inside. In either case, no one would deny that the window is open "because of" the outside temperature.

*Id.*, 108 S. Ct. at 1748. Thus, it is entirely possible for an event to have more than one "but-for" cause.

Here, the district court properly found that for Rule 56 purposes, the evidence is that "Salem hired Lee *because* he is 'much younger' (then 23 years old) and 'more energetic.'" (JA 536) [Emphasis added]. In reaching its conclusion with respect to causation, however, the district court overlooked the import of the word "because." "Because" means "for the reason that." Webster's New Collegiate Dictionary, G. & C. Merriam Co. (1979). As stated, Luton told Bandy plainly that Salem hired Lee "because" he was much younger. The panel's discriminatory intent therefore could not have been clearer: Salem hired Lee instead of Bandy "for the reason that" he was "much younger" than Bandy. From this evidence the jury should have been permitted to consider whether age was a but-for reason for the employment decision. Despite the City's post-hoc rationalization after suit was filed, under Rule 56 and our jurisprudence, the evidence should have been sufficient to submit to the jury the question of whether age was a "but-for" cause of the employment decision.

9

ii.    Direct Evidence

Next, instead of relying on this Court's unpublished opinions in *Cole* and *Arthur* (cited by the district court repeatedly at JA 539, 543-48), and given particularly that Luton's concession that Salem hired Lee "because" he was much younger, the district court should have credited that evidence.  The direct evidence here is on par with the evidence in published opinions of this Court.  For example, in *Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429 (4th Cir. 1985), *cert. denied*, 475 U.S. 1016 (1986), this Court found that discharged employees introduced ample evidence suggesting that the company had fired them because of their age.  *Id.,* at 1433.  For example, one of the plaintiff's immediate supervisors told him that "'eventually Blue Bell is going to have $15,000 a year college boys for salesmen .... Blue Bell cannot stand these five and six percent commission rates; so, in time they will have all young college guys on a salary, being paid expenses and going around taking inventory in Blue Bell accounts.'"  *Id.,* at 1433. The same supervisor stated that "'older people tend to become complacent whereas younger people generally have more drive and ambition.'"  *Id.*   The supervisor also stated that "'younger salesmen do a much better job than older salesmen,'" and "'in the not too distant future, all Wrangler salesmen would be young, college boys driving leased Chevrolets, taking inventory on big Wrangler accounts.'"  *Id.,* at 1434.  This Court concluded that this evidence was sufficient to survive a motion for a directed verdict or a judgment notwithstanding the verdict.  *Id.*

In *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230 (4th Cir. 1982), this court held that direct evidence of age discrimination is sufficient to overcome a motion for a directed verdict or judgment notwithstanding the verdict. There, this court stated that in ruling upon a sufficiency motion in an ADEA case:

> With respect to ruling upon a sufficiency motion in an age case, the Fourth Circuit stated: The first question is whether plaintiff's evidence may have carried the original production burden without need to invoke the *McDonnell-Douglas* presumption. This may have occurred, for example, through direct evidence of a stated purpose to disfavor because of age .... If this is the judicial assessment, inquiry of course ceases, no further production burdens are put in play, and the motion can be denied.

*Wilhelm*, 773 F. 2d at 1442, quoting *Lovelace*, 681 F.2d at 240. Further, in *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109 (4th Cir. 1981), *cert. denied*, 454 U.S. 860, 70 L. Ed. 2d 158, 102 S. Ct. 316 (1981) this Court held that where the plaintiff in an age case relies primarily upon direct evidence of a discriminatory motive by the employer, the case "simply does not fit the mold of the McDonnell Douglas formula." *Id.* at 1113 & n.2 (*quoting Loeb v. Textron, Inc.*, 600 F.2d 1003, 1018 (1st Cir. 1979)). It is therefore unnecessary to engage the *McDonnell Douglas* formula as the district court did below, and particularly given that age was "the reason" for the employment decision, the case should have gone to the jury without resort to *McDonnell Douglas*.

11

iii.    Circumstantial Evidence

Next, the district court properly found that in addition to the direct evidence, Bandy also presented "circumstantial evidence of age discrimination, including (1) Delano's hiring and promotion of younger men, including Luton and Fischer; (2) Delano's allegedly[6] intentional exclusion of an HR staff member from the Booking Coordinator interview committee (thus stacking the deck to permit Lee's hiring); (3) Delano's surprise and alleged awkwardness upon hearing that Bandy was applying for the Booking Coordinator position; (4) Luton's familial relationship with Lee; and (5) lack of age discrimination training prior to Bandy's lawsuit." (JA 544). The evidence described by the district court indeed exists and should have been enough, along with the direct evidence discussed above, to send the case to the jury.

But there's more. The district court overlooked the following evidence favorable to Bandy,

6.    When Delano attempted in February 2018 to hire Hank's wife's cousin, Jefferson Lee, then age 23, the interview panel found that Lee "[d]oes not meet *minimum* education/experience requirements" (JA 481) [Emphasis added].

---

[6] The district court's use of the word "alleged" is inappropriate given the procedural posture of the case and reflects a general lack of adherence to the standard of review under Rule 56.

As a result, he did not get the job. That panel at the time consisted of Wendy Delano, Hank Luton, and Human Resources Director Beth Rodgers (JA 363).

7.    It is reasonable to infer that Delano knew therefore that to hire Lee, she would have to exclude HR from the interview panel. And that's exactly what she did.

8.    When the booking coordinator job next became available again just a few months later, Lee promptly sent a letter dated January 14, 2018 (sic: 2019) applying for the position noting specifically that he was "young" and "the age of 24" (JA 367).

9.    When asked whether he told Lee about the job opening, Luton responded, coyly, "I don't recall if I did or not. … [but] I knew that he was going to apply." (JA 276).

10.    Having learned her lesson after Lee's previous interview, this time Delano did not choose anyone from HR to sit on the interview panel (Rodgers: "I was not involved at all in the whole process" (JA 359)).

11.    Delano instead selected herself, Lee's cousin Hank Luton, and Hank's best friend, Chris Fischer, to "interview" Lee. When asked who decided who would be involved in the hiring process, Delano responded, "I did." (JA 227).

12.     Not surprisingly, Jefferson Lee got the job.  (JA 232).[7]

13.     The booking coordinator job involves booking banquet rooms at the civic center for "lunches and dinners and Rotary and Kiwanis and [ ] bridal showers [and] receptions" (JA 346; see also, JA 224), duties Bandy had performed for about a year while working for previous civic center director Carey Harveycutter in the 1980's (JA 378-79).

14.     After the interviews, Luton approached Bandy and told her that she did a "great job in the interview" (JA 428).

15.     When Harveycutter learned what had happened, he told Bandy, "that is age discrimination and you need an attorney."  (JA 438).

16.     On February 12, 2019,  Delano apologized for Luton's age comment and told Bandy that she did not get the job because she (1) had done the job previously, (2) had proven to be a reliable employee, (3) had demonstrated proficient

---

[7] Lee was never well-suited for the booking coordinator job and did not last long. In July 2021, the City again posted the job on its website (*www.salemva.gov/Departments/Human-Resources/Job-Opening#job247*, visited August 2, 2021),

     Civic Center Booking Coordinator - Civic Center-Administration
     Salary:  $31,455.60 - $50,643.51
     Job Type:  Full Time
     FLSA Status:  Non-Exempt
     Job Code:  0041CCBookCrd
     Posted On:  07/27/2021
     Closes On:  08/09/2021
     Job Description:  View
The web post has since been deleted.

computer skills, (4) that the civic center would not want her to have the job because she already worked at the civic center, and (5) that they had received 30 applications, interviewed only six persons including Bandy, and that Bandy was only one of four persons with the proper skill set. (JA 446-447). Bandy was baffled because those should have been reasons to hire her. (JA 447).

The above-referenced circumstantial evidence therefore also should have been sufficient to send the case to the jury. Moreover, the district court overlooked the fact that not only were Delano's statements evidence as to why Bandy should have received the job instead of Lee, they are also evidence of pretext.

iv.    Bandy is Entitled to an Inference of Discrimination Under *Reeves*.

The district court properly moved past the elements of a failure to hire case, to-wit, (1) plaintiff is a member of a protected class, (2) applied for an open position, (3) was qualified for the position, and (4) was denied promotion under circumstances that created an inference of unlawful discrimination, *see, Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 2001) — all of which are satisfied here — and moved directly to pretext. Under *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 151, 120 S Ct. 2097, 147 L. Ed. 2d 105 (2000), "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 517, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)

15

("Proving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination"). "In appropriate circumstances, the trier of fact can reasonably *infer* from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an *inference* is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" (internal cites omitted).

Simply put, this case reeks of pretext. To summarize, after Lee was found by the City not to meet even the minimum qualifications for employment, Delano manipulated circumstances to exclude HR from the interview panel and instead chose the most biased panel possible — in patent contravention of the City's own hiring policy — to hire Lee. Next, when Bandy expressed interest in the job, Delano hemmed and hawed and stopped just short of telling Bandy not to waste her time because Lee already had the job. Afterward, Luton told Bandy plainly that "we hired my wife's cousin; he's *much younger* and more energetic." With a guilty conscious, Delano then apologized for Luton's statement then gave Bandy several reasons why *she* should have received the job. In addition, the former director told Bandy plainly that she had been subjected to age discrimination.

Next, the district court's statement that a jury "could not find that the Civic Center would have hired Bandy over Lee had age not factored into the decision"

16

because "Bandy was not among any interview committee members' top three candidates" (JA 547) is not supported by the evidence.  To begin, the only reason given not to promote Bandy at the time the decision was made (and not two years later during litigation) was that although Bandy's interview "went well, Salem hired Lee *because* he is 'much younger' and 'more energetic.'" (JA 483).  The district court properly noted that "there is no genuine dispute that Luton's comment was related to Bandy's age, proximate in time to Salem's decision to hire Lee over Bandy, and related to the employment decision at issue" (JA 543-544).  The district court overlooked the fact, however, that age bias infected the entire hiring process, from the constitution of the interview panel to the ranking of the candidates to the decision to hire Jefferson Lee.  The evidence should have been enough therefore to submit the case to the jury.

Moreover, the district court's assertion that "even if Lee was not offered the job, the job would have gone to one of two other candidates that the interview committee member believed were more qualified" is not only post-hoc rationalization that is refuted by the record, it is also improper weighing of the evidence.  Wendy Delano stated plainly that one of the candidates "should have been given the job" but she "didn't make the cut … because I felt she would be overpowering the dynamic we currently have" and "she wanted more money" and therefore "*sort of eliminated herself in the process*."  (JA 214 – 32:18).  Thus,

according to Delano, that candidate (Jennifer Paschall) *never* would have been hired. Not coincidentally, Paschall at the time was "in her 60's." (JA 331). The district court's speculation as to who would have received the job had the discriminatory animus been removed from the equation is therefore just that, speculation that is the product of inaccurate recitation of the evidence as well as weighing the evidence, and thus invades the province of the jury.

Next, in response to the district court's assertion that "[m]ost importantly, Salem offered uncontradicted evidence showing Bandy was not among any interview committee member's top three candidates" (JA 547), this is simply not true — the City's own evidence was in conflict. For example, when asked whether the panelists ranked the candidates, Luton testified, "I don't think so. I can't remember. I thought I only gave my top two. I don't think that they were ranked one to six." (JA 305.1-305.2). In contrast, when asked whether the candidates were ranked, Delano answered, "[n]ot formally, but after the interview, we did rank them informally, just to try to get a feel for who we felt were the best candidates." (JA 109). More importantly, given the direct and circumstantial evidence discussed *supra*, a jury may well find that *any* ranking by the biased panel, as well as the hiring of Jefferson Lee, was the product by age animus.

Next as to the district court's reliance on *Cole* and *Arthur*, neither is instructive. To begin, this Court cautions against citation to unpublished opinions

with good reason.  Both cases are relegated to their facts and are of no precedential value.  *Cole* involved a case in which an employer "fired Cole after she failed to attend work two days in a row without notifying her employer," *Id*., at 169, and *Arthur* involved a case in which an employee "crashed his milk truck into an SUV, striking it hard enough to send the SUV into a triple barrel roll" and "was also issued two formal, written reprimands in September 2003 for consistently failing to supply customers with adequate quantities of milk." *Id.,* at 213. In both cases, the employer therefore had "objective" grounds to terminate the employees.  In contrast, Bandy was unquestionably an excellent employee.  There is not one blemish on her record. Next, after she was not promoted, Delano told Bandy plainly that (1) Delano recognized that Bandy had performed the booking coordinator duties previously; (2) had proven to be a reliable employee; (3) had proven computer skills; and (5) that they had received 30 applications, interviewed only six persons including Bandy, and that Bandy was only one of four persons with the proper skill set.  (JA 446-447). Thus, in contrast to the objective evidence of obvious performance deficiencies in *Cole* and *Arthur*, the hiring criteria here (Lee was "very positive," had "sharp answers" and was "enthusiastic," (JA at 535)) were completely subjective, and as discussed *infra* at 21, subjective criteria are often a ploy to mask discriminatory animus.

Further with respect to the pretext, another age case from the eastern district of Virginia is instructive.  In *Granet v. Presidio*, 2020 U.S. Dist. LEXIS (E.D. Va. Oct. 20, 2020), the court considered a case involving direct evidence of age discrimination and pretext. (JA 517).   There, the employer claimed that Granet's "'unprofessional and inappropriate conduct in the workplace and substandard performance'" motivated its decision to force Granet's resignation. "Presidio offers ample evidence—much of it detailed above—of Granet's unprofessionalism and poor performance."  *Granet* at *12.  Next, the court stated,

> The Court recognizes that Michie's decision to force Granet's resignation *could*—and very well may—have arisen from Granet's "unprofessional and inappropriate conduct in the workplace and substandard performance." (*Id.* ) But Michie's comment came on *the same day* that he sent Granet home and got the ball rolling on his forced resignation. And Michie's email to Presidio's Human Resource Director even mentioned Riles's age. (*Id.*  f 69 ("Brett has been harassing one of [Morton's] employees .... a 21 year old representative of Morton Consulting.").) Granet argues that but for his age, Michie would not have begun the termination process on January 24, 2019, and forced him to resign the next day. In other words, Granet contends that if he and Riles were closer in age, Michie would not have found Granet's behavior as inappropriate and would have allowed Granet's employment at Presidio to continue—at least beyond January 25. Viewing the evidence in the light most favorable to Granet, the Court agrees, finding that a jury could find that Granet has shown, by a preponderance, that but for his age, he would have remained employed at Presidio beyond January 25.

*Id.*, at **12-13.  Accordingly, the court found that "a reasonable jury could find for Granet on the evidence presented," *Id.*, at 13, and denied defendant's motion for summary judgment.  The same result should have obtained here.

20

*Burns v. AAF-McQuay, Inc.*, 96 F.3d 728 (4th Cir. 1996)*, is also instructive. In *Burns*, the Fourth Circuit held that where an employee undercut nearly all of an employer's purported nondiscriminatory justifications for her termination and also offered evidence of a supervisor's "ambiguous comments about her age," there was sufficient evidence of pretext to survive JMOL. *Id.,* at 733. Similarly, in *Tuttle v. Metropolitan Government of Nashville*, 474 F.3d 307, 320 (6th Cir. 2007), the Sixth Circuit concluded that evidence of a supervisor's "inconsistent testimony and statements," combined with "age-related statements" from peer employees (but not supervisors), sufficed to establish an inference of pretext.  Like the evidence of age discrimination in *Burns* and *Tuttle*, Bandy provided evidence to undermine defendant's proffered justification for the failure to promote her as well as evidence to suggest that its true reason was unlawful age discrimination.  She has thus offered sufficient evidence to satisfy her burden of proof under *Reeves,* 530 U.S. at 150 (we "must draw all reasonable inferences in favor of the nonmoving party").

Under our jurisprudence, dissembling alone is enough to defeat summary judgment, for it is easy to "infer from the falsity of the explanation that [the employer] is dissembling to cover up a discrimination purpose."  *Ham v. Wash. Suburban Sanitary Comm'n*., 158 Fed. App'x 457, 462 (4th Cir. 2005) (unpubl.). Given the unquestioned falsity of Delano's explanation to Bandy as to why she did not get the job — made at the time of the employment decision and not two years

later during litigation — Bandy is therefore entitled to an inference of discrimination under *Reeves* and *St. Mary's Honor Center*, which "inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" *Reeves*, 530 U.S. at 148. Moreover, that "affirmative evidence of guilt" should have been sufficient under Rule 56 to overcome summary judgment.

v.     Subjective Criteria

Next with respect to the district court's observation that the City claimed that Bandy's interview was "lackluster," that her "answers were short," and that she showed "little enthusiasm for the job," (JA 534) and that in contrast, Lee was "very positive," had "sharp answers" and was "enthusiastic," (JA 535), first, the district court overlooked the fact that after the interview, Luton approached Bandy and told her that she did a "*great job* in the interview." (JA 428) [Emphasis added]. Thus, a question of fact exists concerning Bandy's performance during the interview which cannot be resolved on summary judgment.

Next, it is difficult to imagine more subjective criteria. Courts have long-recognized that subjective criteria are often used to mask discriminatory animus. *E.g.,* Bell, Daniel L. (1989) *Watson and Subjective Hiring Practices: The Continuing Saga of Industrial Psychology, Title VII and Personnel Selection*, Akron Law Review 588, Vol. 22, Issue 4, Article 5. Similarly, in *Figueroa v. Pompeo*, 923 F.3d

1078 (D.C. Cir. 2019), a foreign services officer for the State Department in Puerto Rico filed suit *pro se* alleging that he was denied promotional opportunities due to his Hispanic ethnicity.  The appeals court said the State Department listed vague promotional criteria, many purely speculative, in refusing to promote Figueroa, including leadership skills, managerial skills, interpersonal skills, communication and foreign language skills, intellectual skills and substantive knowledge.  The State Department also submitted declarations from managers stating that they applied the criteria in considering the promotion.

On appeal, the D. C. Circuit reversed the lower court's dismissal of Figueroa's discrimination claim and stated that "[f]ailing to provide such detail — that is, offering a vague reason — is the equivalent of offering no reason at all." *Id.*, at 1092.  The court also stated that plaintiffs "lack the resources (and the clairvoyance) to guess at how their respective decision-makers interpreted the criteria to explain away each standard at trial.  We also expect that no reasonable jury would accept a vague and slippery explanation." *Id.*, at 1088.  For similar reasons, the jury here may find that the subjective criteria in the case at bar were used to mask discriminatory animus.

## CONCLUSION

For the foregoing reasons, Bandy requests that this Court reverse the award of summary judgment and remand this case for further proceedings.

## REQUEST FOR ORAL ARGUMENT

Bandy requests oral argument.


Respectfully Submitted,

TAMMY BANDY

By:   /s/ *Terry N. Grimes*
       Of Counsel

Terry N. Grimes, Esq. (VSB No. 24127)
TERRY N. GRIMES, ESQ., P.C.
320 Elm Avenue, S.W.
Roanoke, Virginia 24016
TELEPHONE: (540) 982-3711
FACSIMILE: (540) 345-6572
tgrimes@terryngrimes.com

*Counsel for Appellant*

24

**CERTIFICATE OF COMPLIANCE**

1.     This document complies with type-volume limits because, excluding the parts

of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure

statement, table of contents, table of citations, statement regarding oral

argument, signature block, certificates of counsel, addendum, attachments):

this document contains 5,928 words.

2.     This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface

using Microsoft Word in 14 point Times New Roman.

Dated: November 5, 2021                    */s/ Terry N. Grimes*
                                           Terry N. Grimes, Esq. (VSB No. 24127)
                                           TERRY N. GRIMES, ESQ., P.C.
                                           320 Elm Avenue, S.W.
                                           Roanoke, Virginia 24016
                                           TELEPHONE: (540) 982-3711
                                           FACSIMILE: (540) 345-6572
                                           tgrimes@terryngrimes.com

                                           *Counsel for Appellant*