# CASE NO. 21-1565

## IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

---

TAMMY BANDY,

*Plaintiff - Appellant,*

v.

CITY OF SALEM, VIRGINIA,

*Defendant - Appellee,*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT ROANOKE

---

## BRIEF OF APPELLEE

---

Jeremy E. Carroll
GUYNN WADDELL CARROLL & LOCKABY, P.C.
415 South College Avenue
Salem, VA 24153
540-387-2320
jeremyc@guynnwaddell.com

*Counsel for Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __21-1565__        Caption: __Tammy Bandy v. City of Salem, Virginia_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__City of Salem, Virginia_____
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                        ☐ YES ☑ NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _____5/20/2021_____

Counsel for: City of Salem, Virginia

Print to PDF for Filing

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................... iii

JURISDICTIONAL STATEMENT .................................................... 1

STATEMENT OF THE ISSUES ......................................................... 1

STATEMENT OF THE CASE ............................................................ 1

    I.    Factual Background ................................................................ 4

    II.   Procedural Background ......................................................... 16

SUMMARY OF ARGUMENT ......................................................... 17

ARGUMENT ..................................................................................... 18

    I.    Standard of Review............................................................... 18

    II.   Discussion of the Issues....................................................... 19

          A. The Legal Framework for Plaintiff's ADEA claim ........... 19

          B. Delano was the decisionmaker for the challenged employment
             action, and there is no evidence that she acted based on any
             age-based discriminatory animus........................................ 21

          C. Plaintiff cannot prove that age was the but-for cause of the
             City's decision to not promote her to the Booking Coordinator
             position ................................................................................. 24

               1. The City hired Lee because he was the most qualified
                  candidate for the Booking Coordinator position........................... 26

               2. Plaintiff cannot cast doubt on the City's stated reasons for
                  deciding to not promote her to the Booking Coordinator
                  position .................................................................................. 31

i.   Plaintiff's failure to rebut Lee's superior qualifications...........32

ii.  Plaintiff's contention that Lee was not qualified for the Booking Coordinator position....................................................33

iii. Plaintiff's claim that the City is advancing *post hoc* rationalizations.........................................................................34

iv.  Plaintiff's theory that Delano stacked the deck to hire Lee in 2019..............................................................................35

v.   Plaintiff's claim that Luton's comment proves discrimination...................................................................39

CONCLUSION..................................................................................40

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................................42

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................ 19

*Arthur v. Pet Dairy*,
593 F. App'x 211 (4th Cir. 2015) ........................... 24, 25, 31-32, 33

*Bailey v. Dart Container Corp.*,
292 F.3d 1360 (Fed. Cir. 2002) ................................... 21 n.8

*Baqir v. Principi*,
434 F.3d 733 (4th Cir. 2006) ...................................... 25, 39

*Billingslea v. Astrue*,
502 F. App'x 300 (4th Cir. 2012) ....................................... 35

*Cole v. Family Dollar Stores of Md., Inc.*,
811 F. App'x 168 (4th Cir. 2020) .................................. 25, 39-40

*EEOC v. Navy Fed. Credit Union*,
424 F.3d 397 (4th Cir. 2005) ............................................ 18

*Elledge v. Lowe's Home Ctrs., L.L.C.*,
979 F.3d 1004 (4th Cir. 2020) .......................................... 26

*Gross v. FBL Fin. Servs.*,
557 U.S. 167 (2009) ............................... 19, 20, 24, 25, 32

*Hill v. Lockheed Martin Logistics Mgmt.*,
354 F.3d 277 (4th Cir. 2004) ................................. 20, 21, 22

*Inguanzo v. Hous. & Servs., Inc.*,
2014 U.S. Dist. LEXIS 132197, 2014 WL 4678254
(S.D.N.Y. Sept. 19, 2014) ....................................... 24 n.10

*O'Connor v. Consol. Coin Caterers Corp.*,
56 F.3d 542 (4th Cir. 1995) ...................................... 21 n.7

*Price Waterhouse v. Hopkins*,
490 U.S. 228 (1989) ...................................................... 21

*Proud v. Stone*,
    945 F.2d 796 (4th Cir. 1991) ...............................................................37

*Reeves v. Sanderson Plumbing Prods. Inc.*,
    530 U.S. 133 (2000) ................................................................. 20, 21

*Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*,
    407 F.3d 631 (4th Cir. 2005) ............................................................ 19

*Rosenow v. CareCore Nat'l, LLC*,
    2012 U.S. Dist. LEXIS 68800, 2012 WL 1802456 (D.S.C. May 17, 2012) .... 37

*Shaw v. Stroud*,
    13 F.3d 791 (4th Cir. 1994) .............................................................. 19

*United States v. American R. Express Co.*,
    265 U.S. 425 (1924) ................................................................. 21 n.8

*Westmoreland v. TWC Admin. LLC*,
    924 F.3d 718 (4th Cir. 2019) ................................................ 19, 25, 31

*Wilhelm v. Blue Bell, Inc.*,
    773 F.2d 1429 (4th Cir. 1985) ......................................................... 40

*Young v. Barnhart*,
    52 F. App'x 191 (4th Cir. 2002) ................................................. 31, 33

*Young v. Lehman*,
    748 F.2d 194 (4th Cir. 1984) ........................................................... 31

## Statutes

28 U.S.C. § 1291 .................................................................... 1
28 U.S.C. § 1331 .................................................................... 1
28 U.S.C. § 1343 .................................................................... 1
29 U.S.C. § 621 ..................................................................... 1
29 U.S.C. § 623 .................................................................... 19

## JURISDICTIONAL STATEMENT

Plaintiff-appellant Tammy Bandy brings this action against defendant-appellee the City of Salem, Virginia ("City") pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. (JA 6 ¶ 1.) The United States District Court for the Western District of Virginia had subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. The district court granted the City's motion for summary judgment, and Plaintiff appealed. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Given the uncontroverted evidence that Civic Center Director Wendy Delano made the decision to hire Jefferson Lee as the Civic Center's Booking Coordinator and that age was not a factor in her decision, should the district court have granted the City's motion for summary judgment on those grounds?

2.      Did the district court properly grant the City's motion for summary judgment because Plaintiff cannot prove that age was the but-for cause of the City's decision to not promote her to the Booking Coordinator position?

## STATEMENT OF THE CASE

Fifty-one year old Wendy Delano hired twenty-three year old Jefferson Lee as the Booking Coordinator for the Salem Civic Center. The job entails event planning, sales, and marketing duties, among other functions. Delano hired Lee

1

because he was the most qualified candidate for the job. He graduated college with a major in Sports Business and a minor in Communications. He worked in sales and marketing with multiple professional sports teams while in college. After college, he enrolled in a master's degree in Executive Leadership while employed as an Assistant Athletic Director at a local high school.

Delano chose Lee over five other finalists, including the fifty-two year old Plaintiff, Tammy Bandy.[1] Bandy was a high school graduate who had been employed as a part-time Box Office Cashier at the Civic Center for approximately one year. She had worked for only twelve of the preceding thirty-four years, and she never held a job for much more than two years. Her prior jobs mostly were clerical and retail positions, and her most relevant work experience occurred over thirty years earlier. These uncontroverted facts demonstrate that Lee's superior qualifications – not Plaintiff's age – were the reasons Delano hired him as Booking Coordinator.

That Plaintiff's age was not a basis for Delano's decision to not promote Plaintiff is apparent from other facts in the record. For example, Plaintiff did not rank among the top three candidates for the job following interviews, and she ranked behind forty-four year old and sixty year old candidates. Thus, even if Lee

---

[1] The other four candidates were ages twenty-three, forty, forty-four, and sixty. (JA 107.)

2

had not been the superior candidate, Plaintiff would not have received the

promotion for reasons unrelated to her age.  Furthermore, in the year preceding the

Booking Coordinator vacancy, Delano had participated in decisions to hire Bandy

and to not hire Lee for jobs at the Civic Center.  If Delano had been motivated by

their respective ages, those hiring decisions would have come out differently.

Up against these uncontroverted facts, Plaintiff relies on speculation and

conjecture, rather than evidence, to contend that Delano orchestrated a scheme to

hire young men at the Civic Center.  She has no evidence to support this alleged

scheme, however.  Her argument is premised on baseless claims that Delano

wanted to hire Lee in February 2018 but was unable to do so, that the City's

Human Resources ("HR") Department opposed hiring Lee, and that Delano

violated City policy during the February 2019 Booking Coordinator hiring process.

None of these claims have any support in the record.  Plaintiff's argument also

ignores the fact that Delano – if she were scheming to hire Lee – could have done

so when he applied for Civic Center vacancies in November 2018.

In the end, Plaintiff's claim comes down to a single, stray comment made by

one of the three members of her interview panel.  The individual who made the

comment did not make the decision to hire Lee instead of Plaintiff.  Furthermore,

given Lee's superior qualifications for the Booking Coordinator position, Plaintiff

cannot prove that the City would have promoted her but-for her age.

I.   **Factual Background**

A.   **The Salem Civic Center and the vacancy in the Booking Coordinator position**

The City owns and operates an event venue known as the Salem Civic Center.  (JA 7 ¶8.)  Wendy Delano is the Civic Center's Director.  (JA 220-21.) Delano oversees the facility's day-to-day functions.  (JA 101.)  She reports directly to the City Manager and oversees a staff of approximately twenty full-time employees.  (JA 221-22.)  Including part-time employees, Delano directly or indirectly supervises approximately 250 Civic Center employees.  (JA 222.)

In late 2018 or early 2019, Delano posted a job opening for a Booking Coordinator at the Civic Center.  (JA 103, 413.)  The City describes the Booking Coordinator as "the booking agent for the Civic Center, managing reservations and rentals, preparing contracts, preparing invoices and financial records, and related work as apparent or assigned."  (JA 98.)  The job requires at least a "[h]igh school diploma or GED and moderate experience in event planning, marketing and advertising, sales, hotel booking, or equivalent combination of education and experience."  (JA 98.)  The Booking Coordinator reports to the Civic Center's Director.  (JA 98.)

The Booking Coordinator performs many duties involving sales, marketing, and management of events at the Civic Center.

4

> [T]he booking coordinator's function is to bring in events such as meetings or banquets or possibly sporting events or even, you know, if we've got a convention in town, their job is to try to coordinate; basically they are looking to not only sell us externally to people outside but also looking to sell us where people come to us looking for places to have functions.
>
> . . .
>
> You have to take the time to get to know your client. You have to take the time to try and figure out how to sell to them, what works, how room setups could be beneficial, how we could make it very easy and convenient for them to come into our facility. You are bringing in larger functions that have implications on the catering business and additional money; you know, you might even be bringing in a function that would tie into a concert or show. There is just a lot more opportunity for revenue to be generated in the booking position.

(JA 116-17.) (*See also* JA 102, 104-05.)

Approximately thirty candidates applied for the position. (JA 52, 105.) As is customary, the City's HR Department screened the applicants. (JA 135-36, 455-56, 459-60.) The Assistant HR Director reviewed all applications and identified eleven candidates who she thought were qualified based on the job description. (JA 229-30, 455-56, 459-60.) (*See also* JA 354.) Delano then chose six candidates to interview. (JA 229-30.)

Delano assembled a three-person panel to interview the six candidates. In addition to herself, Delano selected Hank Luton, the Civic Center's Assistant Director, and Chris Fischer, the outgoing Booking Coordinator, to serve on the panel. (JA 101-04.) Delano developed written interview questions for the

candidates, and obtained the HR Department's approval for the questions.  (JA

108.)  The panel conducted the interviews on February 7 and 8, 2019.  All three

members of the interview panel took notes during the interviews.  (JA 141-76.)

### B.     Plaintiff's application and qualifications

Plaintiff submitted an online application, resume, and cover letter for the

Booking Coordinator position.  (JA 87-90, 132-33.)  In her cover letter, which was

addressed to Delano, Plaintiff stated she "fe[lt] that [she] would be an asset to the

civic center as well as [Delano], due to [her] past experience scheduling and

booking rooms at the civic center."  (JA 132.)  Plaintiff did not provide any more

details on that experience in her cover letter.  Plaintiff did not discuss any other

skills and/or experiences that related to the Booking Coordinator position.  Instead,

she wrote that her then-current position in the box office gave her an

"understanding of a lot of the ins and outs of the facility," which would provide for

"a smooth transition."  (JA 132.)

Plaintiff graduated from Salem High School in 1984.  (JA 25, 87.)  She has

no further formal education.  (JA 26.)  In 1985, after graduating high school,

Plaintiff worked for the City as a Clerk in the Utility Billing Department.  (JA 27.)

Plaintiff left that position after nearly two years to take a job in the Civic Center.

(JA 28-29.)  She worked as the Civic Center Secretary from February 16, 1987, to

October 27, 1988.  (*See* JA 85 (noting date employed), 71 (noting last day

6

worked).)  According to Plaintiff, part of her duties as Civic Center Secretary included "the booking duties."  (JA 48, 378-79.)

After leaving the Civic Center, Plaintiff next worked for a temporary staffing agency in 1989.  She worked various jobs including Clerk Typist, Data Entry Clerk, and Receptionist.  (JA 30.)  Beginning in 1990, Plaintiff worked as a Clerk Typist for Roanoke County Parks and Recreation for approximately a year and a half.  (JA 31-32.)  Plaintiff left the workforce for a little more than a decade, returning to work when she took a job as an Optical Receptionist for Vistar Optical in January 2003.  (JA 32, 88, 133.)  Plaintiff worked at Vistar until August 2004. (JA 88, 133.)   Next, Plaintiff worked as a part-time Sales Associate at Buy the Season, a home décor store, from April 2005 to September 2006.  (JA 88, 133, 390-92.)  She left that job for a similar retail position at Olde Salem Mercantile, where Plaintiff worked from September 2006 to October 2008.  (JA 88, 133, 392-93.)  Plaintiff again left the workforce, for approximately ten years, until the City hired her as a part-time Box Office Cashier at the Civic Center in February 2018. (JA 33-34, 39-41, 87-88, 133.)[2]

Plaintiff interviewed for the Box Office Cashier job with an interview panel comprised of Delano, Luton, and Box Office Supervisor Stephanie Sowder.  (JA

---

[2] Plaintiff also worked at an animal shelter for three days in 2016.  (JA 36-39.)

39-41, 96-97.)[3]  The City hired Plaintiff and Sowder became her direct supervisor.

(JA 40-41, 93, 96-97, 87, 133.)  As a Box Office Cashier, Plaintiff greeted

customers who came to the box office window, assisted them with seat selection

and purchasing tickets, answered the telephone, counted sporting event vouchers,

processed employee information for employees of the 2018 Salem Fair, generated

cashier reports, and secured funds in the Civic Center vault.  (JA 43-46, 102.)

Plaintiff occasionally escorted customers to their seats.  (JA 44-45.)  After one year

as a Box Office Cashier, Plaintiff applied for the Booking Coordinator job.  (JA

47.)  She was fifty-two years old at the time.  (*See* JA 7 ¶ 5, 24.)

    The Box Office Cashier is not in the same department as the Booking

Coordinator.  (JA 117.)  It is a "totally different" position.  (JA 118.)  The cashier

position is a part-time position primarily selling tickets, answering questions, and

handling cash transactions.  (JA 116-17.)  The Box Office Cashier job duties have

little application to the Booking Coordinator position.  (*See* JA 116-18.)

---

[3] Plaintiff complains that the 2019 Booking Coordinator interview panel did not
include a representative from HR.  (Brief of Appellant [Doc. 12] ("Open. Br.") at
2-3, 13 ¶¶ 7, 10.)  She claims, without citation to the record, that the failure to
include an HR representative violated City policy.  (Open Br. at 16.)  There is no
such policy (or evidence of any such policy).  Further debunking Plaintiff's theory,
the interview panels that interviewed Plaintiff in February 2018 (when she was
hired) and Lee in November 2018 (when he was not hired) (JA 474-76) also did
not include any HR representatives.

Plaintiff was one of the six applicants Delano selected for an interview. (JA 106-07.) Plaintiff "wasn't extremely talkative" during her interview. (JA 110.) Her answers were "short," and she "didn't appear to be overly enthusiastic." (JA 112, 113.) Though Plaintiff "didn't act like she didn't want the job, [] she didn't act like she wanted to go over the top to get it, either." (JA 113.) Plaintiff "didn't put forth a whole lot of effort. She was very short on her answers. She didn't expound upon things." (JA 113.)

When asked how she would approach a prospective client, Plaintiff "didn't really have an answer." (JA 122.) Plaintiff said she would tell the prospective client the Civic Center is convenient with nice restrooms, plenty of parking, catering, and staff available to assist. (JA 122, 153, 155, 157.) Delano viewed this as simply naming some functionalities of the facility – not a sales pitch. (JA 122.) Delano expected a candidate for the Booking Coordinator position to have a better answer to such a "basic" question. (JA 122.)

## C.    Jefferson Lee's application and qualifications

Lee also was one of the six candidates Delano chose for an interview. (JA 107.) Lee holds a bachelor's degree in Sports Business with a minor in Communications from the University of Mount Union. (JA 205-06, 488, 489.) Although the Booking Coordinator job only required a high school diploma or GED, Delano believed Lee's additional education "would probably . . . be helpful

9

down the road" and "showed that he had the propensity to see something through."
(JA 121-22.)

Lee submitted a lengthy cover letter detailing his "over four years of
experience in sales and marketing."  He cited specific work experience in areas
such as marketing, event management, and promotion for professional sports teams
in Cleveland and for events while in college.  (JA 488.)[4]  During college, Lee
helped with event planning and promotion for the Cleveland Cavaliers and
Cleveland Indians. (JA 488, 490.)

At the time he applied, Lee was working full-time as Assistant Athletic
Director at a local high school and was enrolled in an online master's program in
Executive Leadership.  (JA 205-10, 489.)  Among other duties, Lee coordinated
travel arrangements for school teams in his athletic director role.  (JA 489.)

Delano believed Lee's past work experience would translate well to the
Booking Coordinator role:

> Jefferson [Lee] had a lot of experience that I felt would be good for
> this position.  He coordinated not only ticket sales, but he also had
> experience writing and managing events which tends to lean towards
> the booking function very well, because many of the people that are
> coming to us to book events are having functions, so you have to
> understand the event coordinator side of things to make that go more
> smoothly for other people here in the facility, so, for instance, the
> booking coordinator position just does not write a contract; they are
> also talking to event managers here [at the Civic Center], telling them

---

[4] Lee's cover letter contained a typo in the date.  It listed the year as 2018 instead
of 2019.  (JA 351, 488.)

what the room setup is going to be, why this client needs so many tables and chairs, or what type of food they may be interested in, and these are conversations that translates over to catering, but the booking coordinator position is sort of an in-between.

It is a sales position, but it is also an in-between for the client to the other departments here, and it is important to have the right person doing that because then they reflect well on us as a facility, but they also help us get the job done properly for the clients so we can get return business.

. . .

Jefferson [Lee] showed a lot of initiative in the fact that he worked a lot of different jobs and interned and did various other functions outside of just going to school. The fact that he booked travel and hotels and things like that in his assistant athletic director position lended itself to the fact that he understood what it meant to coordinate travel and work with the booking calendar. He understood the logic behind scheduling things, so that was important to me.

The fact that he also had some background in sports is important as well because you have to be able to coordinate lots of different pieces and elements to make those events work. He had the management experience, so he understood the management side of things coming into that position which I thought was very important because of the nature of what he was dealing with. He also understood the marketing side of things which is important where you are going out and making sales calls. He wasn't afraid to make cold calls; he had experience doing that, so, you know it was just a good fit.

(JA 119-21.)

With respect to Lee's interview, "[h]e was very positive. He had sharp answers. He was talkative and he expounded upon his answers. He gave ideas on ways that he felt like he could help sell the facility. . . . [H]e was definitely upbeat." (JA 126.) Lee's interview was "well above pretty much everyone's with

11

the exception of" the other two top candidates, who "had about the same amount of enthusiasm." (JA 126-27.) Additionally, Lee was supremely prepared; he "came in [to the interview] carrying [the Civic Center] facility manual which to [Delano] showed that he had taken the time to do the homework and get to know the facility before he came in." (JA 122-23.) This particular act "spoke volumes" and was "a contributing factor" to his hire. (JA 123.)

### D. Delano's decision to hire Lee

Lee had applied and interviewed for other positions at the Civic Center, but he had never before been the most qualified candidate. (JA 118-19, 467-77, 484-87.) This time, he was the top rated choice for each of the three members of the interview panel. (JA 235-36, 259-60, 293-94, 326-27, 329-31.) After the interviews, each panel member independently ranked their top candidates. (JA 293-94, 329-31.) Everyone on the panel ranked Jefferson Lee as the top candidate; no one ranked Plaintiff as the top candidate. (JA 235-36, 259-60, 292-95, 330-31.) Notably, the panel's second and third ranked candidates were forty-four and sixty years old, respectively. (JA 107, 199, 236, 293, 330-31, 336.) After the panel met and discussed the candidates, Delano made the decision to hire Lee. (JA 227, 294, 336.) Delano then sent an offer letter to Lee. (JA 211-13.)

12

### E.    Plaintiff's subsequent conversation with Delano

On February 12, 2019, Delano informed Plaintiff she had not been selected for the Booking Coordinator position.  (JA 54.)  According to Plaintiff, Delano complimented her but then said that she was "not aggressive enough."  (JA 54-55.)  Plaintiff did not ask Delano why she was not selected.  (JA 55.)  Delano did not discuss with Plaintiff the specific qualifications of the other candidates or how the other candidates performed in their interviews.  (JA 56-57.)  Delano's positive remarks about Plaintiff were an attempt "to build her up and let her know that there were some things that she did really good."  (JA 111.)  (*See* JA 125-26.)

### F.    Plaintiff's subsequent conversation with Luton

On February 14, 2019, Luton, a member of the interview panel, allegedly told Plaintiff that "we hired my wife's cousin; he's much younger and more energetic."  (JA 58-59.)  Besides Luton, nobody else at the Civic Center treated Plaintiff in a way that she felt constituted age discrimination.  (JA 70.)

### G.    Plaintiff's surreptitiously recorded conversation with Delano

On April 23, 2019, Plaintiff tendered her resignation to Delano.  (JA 64.)  Plaintiff recorded their conversation but did not tell Delano.  She "wanted to see what [Delano] would truthfully say" when told about Luton's alleged comment.  (JA 64-65.)

Plaintiff told Delano she was resigning because she "just needed more hours." (JA 214 at 1:05.)[5] Plaintiff already had a job lined up at Grandma's Attic, a home décor retail store, which offered Bandy about 15 more hours per week than she was getting at the City. (JA 214 at 1:35, 2:18.)

Delano offered Plaintiff the opportunity to work part-time on weekends from time-to-time, which Plaintiff said she would consider. (JA 214 at 2:43.) Plaintiff reiterated that she was resigning for "more money" and said she would "love" to stay at the Civic Center full-time for retirement benefits, but there was nothing available. (JA 214 at 3:20.) Delano said she "hate[d] to lose [her]" but "understood where [she was] coming from." (JA 214 at 5:24.) Delano again invited Plaintiff to let Delano know if she wanted to work any part-time hours. (JA 214 at 5:59.)

Delano and Plaintiff then discussed how Plaintiff's continuing to work part-time hours would impact her future prospects for full-time employment at the Civic Center. (JA 214 at 6:34.) Plaintiff told Delano that she was concerned about holding out for a future position because of "Hank's answer to why [she] didn't get the booking coordinator position." (JA 214 at 8:30.) Plaintiff then told Delano about Luton's comment. (JA 214 at 9:10.) Delano responded:

---

[5] The recording is referenced at JA 214, but it is filed with the Court as Volume II of the Joint Appendix. References to the recording will include the time of the recording where the quoted language can be heard.

14

> It mortifies me that he said that to you because that had nothing to do with my decision. Absolutely nothing. And also it bothers me because it discredits what Jefferson does bring to the table. . . . So it really sort of torques me that that came across to you the way it did as well as I can understand why you would be torqued. That is not acceptable. . . . First off age didn't have anything to do with any of it. It's not supposed to. It doesn't in my book. So where he came from with that was way off base. . . . Way off base.

(JA 214 at 9:44.)

> So I wish you would have talked to me about this a long time ago. Because it feels to me like this has been festering, if it's taken you this long to say something. And I don't like the way he answered it. So, two-fold I will say this. Is that, one, Jefferson has applied for four positions up here before he even got hired. So kudos to him for his resiliency. Yes, he has a sports degree, but that doesn't, that's not the reason why he got hired. He got hired because he has backgrounds in selling, he has backgrounds selling tickets, he has background in working events down at parks & rec, he has background in coordinating functions with different events that lended itself in my mind to what that position could do. So in my mind that was a lot of his strengths. It had nothing to do with his age. It had to do with the fact that he came from a lot of different directions.

(JA 214 at 12:05.)

Delano reiterated that she made the decision. While there were three people on the interview panel, Delano said she could "flip that switch" to overrule Fischer and Luton. (JA 214 at 13:43.) She stated that Luton's comment did not reflect her opinion. (JA 214 at 16:28.) Delano again reassured Plaintiff that age "had absolutely nothing to do with it . . . with 100% certainty . . . ." (JA 214 at 23:48.) Plaintiff agreed, stating that she also did not think age was a factor in the decision because she was only one year older than Delano. (JA 214 at 24:00.)

15

In her deposition, Plaintiff confirmed that Delano "was mortified that [Luton] said that to [her]." (JA 66.) Plaintiff also reiterated that she "do[esn't] think that age was a factor for [Delano] in the decision." (JA 67.)

### H.    Plaintiff's interactions with Luton after she resigned

Plaintiff relates two instances where she felt "harassed" by Luton after she resigned. Plaintiff claims that Luton came into the box office two days later, "put his arm around [her] shoulder with a big grin on his face," and said "I heard you are leaving us." (JA 62.) Plaintiff felt it "was a little uncalled for." (JA 62.) Plaintiff also claims that Luton came back the next day and asked "are we having a celebration party"? (JA 62-63.) Plaintiff thought it was a "smart aleck comment[]." (JA 63.)

## II.    Procedural Background

Plaintiff filed her ADEA suit against the City on December 10, 2019. (JA 6.) Plaintiff's Complaint asserted claims for harassment and discrimination, including failure to promote and constructive discharge. (JA 9) (*See also* JA 538-551 (district court discussing Plaintiff's claims).) Following discovery, the City moved for summary judgment (JA 21), which the district court granted on March

16

19, 2021.  (JA 553.)  Plaintiff noted her appeal to this Court on April 19, 2021.

(JA 554.)[6]

## SUMMARY OF ARGUMENT

Delano decided to hire Lee as the Booking Coordinator because he was the

most qualified applicant.  The record is devoid of any evidence that Delano was

motivated by age in making her decision.  In fact, even Plaintiff testified that

Delano was not motivated by age in making her decision.  This Court should

affirm the district court's decision because there is no evidence that age was the

but-for cause for Delano's decision.

Luton was a member of the interview panel, but he merely made a

recommendation to Delano.  Fischer likewise made only a recommendation to

Delano.  Delano made the final decision.  While Luton may have had some

influence in the process, he was not "principally responsible" for the challenged

employment decision.  Accordingly, Luton's stray comment is not direct evidence

of discrimination.

Ultimately, however, this Court need not resolve these issues.  For even if

the panel was the decisionmaker and Luton's comment is viewed as direct

---

[6] Plaintiff does not address her harassment or constructive discharge claims in her
opening brief.  Presumably, she has abandoned the claims.  In any event, for the
reasons stated by the district court (JA 549-51), Plaintiff's harassment and
constructive discharge claims are without merit and properly were dismissed.  (*See
supra* at 13-16 (Sections I.F. through I.H.).)

evidence of discrimination (as the district court viewed it), Plaintiff still cannot prove that age was the but-for cause of the decision to not promote Plaintiff.  Lee unquestionably was the most qualified applicant.  Plaintiff ranked fourth most qualified of the applicants.  The City hired Lee because he was most qualified.  If it had not hired Lee, it would have hired two other candidates before hiring Plaintiff, one of whom was older than Plaintiff.

Plaintiff cannot cast doubt on the City's stated conclusion that Lee was the most qualified candidate.  In fact, Plaintiff fails to bolster her credentials at all much less present sufficient evidence for a reasonable juror to conclude that Plaintiff was more qualified.  Based on the evidence in the record, as opposed to Plaintiff's rank speculation, no reasonable juror could conclude that Plaintiff would have been promoted to the Booking Coordinator position in the absence of age discrimination.

## ARGUMENT

### I.    Standard of Review

The Court "reviews[s] de novo an award of summary judgment, viewing the facts and inferences drawn therefrom in the light most favorable to the non-moving party." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005) (citation omitted).  Summary judgment is appropriate "if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to material fact and that the moving

party is entitled to judgment as a matter of law." *Shaw v. Stroud*, 13 F.3d 791, 798

(4th Cir. 1994) (citations omitted). The nonmoving party must show that "there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for

that party. If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." *Res. Bankshares Corp. v. St. Paul Mercury*

*Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986)).

## II.    Discussion of the Issues

### A.    The Legal Framework for Plaintiff's ADEA claim

The ADEA prohibits an employer from taking an adverse employment

action against an employee "because of" the employee's age. *Gross v. FBL Fin.*

*Servs.*, 557 U.S. 167, 170 (2009) (citing 29 U.S.C. § 623(a)). "[A]n employee may

make out an ADEA claim using either direct or circumstantial evidence."

*Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (citing

*Gross*, 557 U.S. at 177-78). Claims grounded in circumstantial evidence are

analyzed using the *McDonnell Douglas* burden-shifting framework.

*Westmoreland*, 924 F.3d at 725. Whether relying on direct or circumstantial

evidence, a plaintiff bringing a disparate-treatment lawsuit under the ADEA must

prove that age was not merely a motivating factor of the challenged adverse

employment action but was in fact its "but-for" cause. *Gross*, 557 U.S. at 177-78

(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)).

To determine whether liability can be imposed on the employer, the relevant

inquiry is whether the employer's "decisionmaker" intentionally discriminated

against the plaintiff. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 286

(4th Cir. 2004) (*en banc*). The ADEA does "not make employers vicariously liable

for the discriminatory acts and motivations of everyone in their employ, even when

such acts or motivations lead to or influence a tangible employment action." *Id.* at

287. In *Hill*, this Court declined to "embrac[e] a test that would impute the

discriminatory motivations of subordinate employees having no decisionmaking

authority to the employer, and make them agents for purposes of the employment

acts, simply because they have influence or even substantial influence in effecting

a challenged decision." *Id.* at 291. This Court explained:

> to survive summary judgment, an aggrieved employee who rests a
> discrimination claim under . . . the ADEA upon the discriminatory
> motivations of a subordinate employee must come forward with
> sufficient evidence that the subordinate employee possessed such
> authority as to be viewed as the one *principally responsible for* the
> decision or the actual decisionmaker for the employer.

*Id.* (emphasis added).

20

Statements by the individual "principally responsible" for a challenged

employment decision may be direct evidence[7] of discrimination under the ADEA.

*See id*. at 288-89 (citing *Reeves*, 530 U.S. at 138, 140, 151-52).  Conversely,

statements by nondecisionmakers in the challenged hiring process do not suffice to

satisfy the plaintiff's burden of proving discrimination.  *Id*. at 286 (citing *Price*

*Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)).

Even the discriminatory motives of those employees who have a "substantial

influence in effecting a challenged decision" are insufficient to impose liability on

the employer.  *Id*. at 290-91.

**B.    Delano was the decisionmaker for the challenged employment action, and there is no evidence that she acted based on any age-based discriminatory animus.[8]**

The evidence in the record proves that Delano was the individual

"principally responsible" for the decision to not promote Plaintiff to the Booking

Coordinator position.  (*See* JA 227, 294, 336.)  After screening the applications,

the City HR Department sent Delano potential candidates to be interviewed.  (JA

---

[7] Direct evidence is "evidence which, if believed, would prove the existence of a fact . . . without any inference or presumptions." *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir. 1995) (citation omitted).

[8] Arguments rejected, overlooked, or ignored by the district court may be advanced on appeal without filing a cross appeal.  *See United States v. American R. Express Co.*, 265 U.S. 425, 435 (1924); *Bailey v. Dart Container Corp.*, 292 F.3d 1360, 1362 (Fed. Cir. 2002) (citations omitted).

135-36, 229-30, 455-56, 459-60.)  Delano spearheaded the hiring process from that point forward.  She chose the interview panel and the candidates to be interviewed. (JA 101-04, 188-89, 226-27, 229-30.)  She developed written interview questions and obtained HR's approval for those questions.  (JA 108.)  All three panel members interviewed the six candidates and took notes.  (JA 141-76.)  Afterwards, Luton and Fischer expressed their opinions to Delano about the best candidates. (*See* JA 227-28, 293-94, 330-31.)  Delano then made the decision to hire Lee.  (*See* JA 56, 227, 258, 294, 295, 320, 336.)  At most, Luton and Fischer had some degree of influence in the hiring process.  Influence, even substantial influence, is not sufficient to elevate an employee's involvement to that of a decisionmaker.  *Hill*, 354 F.3d at 291.

Crucially, *no witness* testified that anyone other than Delano made the final hiring decision.  *No witness* testified that Luton, Fischer, or the panel made the decision.  In ruling that the panel could be viewed as the decisionmaker (and that Luton's comment could therefore be direct evidence of discrimination), the lower court put great weight on the fact that Delano and Luton routinely used the pronoun "we" when discussing the hiring decision.  (JA 541.)  The use of that plural pronoun is simply too slender a reed for a reasonable juror to conclude that the panel acted as a body given the uncontroverted testimony that Delano made the decision.  And that testimony is not a *post hoc* rationalization that has arisen in the

22

context of litigation. When Plaintiff surreptitiously recorded Delano on April 23, 2019, Delano noted that *her* decision was not motivated by age. (JA 214 at 9:44 (Delano stating that age "had nothing to do with *my* decision.") (emphasis added).) She also emphasized that she had the authority to overrule Fischer and Luton. (JA 214 at 13:51 (". . . Chris and Hank didn't outnumber me. If I didn't agree with that decision, I wouldn't have put him in there. Cause I have the ability to flip that switch.").) Given this uncontested testimony, the occasional use of the pronoun "we" is not sufficiently probative to create a genuine issue of material fact as to the actual decisionmaker in this case.[9]

The evidence in the record also shows that Delano was not motivated by any age-based animus in making the decision to hire Lee. Delano testified she hired Lee because of his experience in booking, event planning, event management, and marketing, his education, and interview performance. (JA 119-23, 126-27.) When Plaintiff secretly recorded Delano "to see what she would truthfully say" (JA 64-65), Delano denied age was a factor. (JA 214 at 9:44, 12:55, 23:48, 26:26.) Plaintiff also conceded age was not a factor in Delano's decision in the same recording. (JA 214 at 24:00.) Plaintiff reiterated her belief during her deposition. (JA 67 ("No, I don't think that age was a factor for her in the decision.").)

---

[9] Even if there were evidence that the panel made the decision, there is no evidence that the majority of the panel – Delano and Fischer – shared Luton's alleged discriminatory animus.

Because Delano was the individual "principally responsible" for the Booking Coordinator hiring decision and she was not motivated by any age-based animus, this Court should affirm the district court's decision granting the City's motion for summary judgment.[10]

## C.    Plaintiff cannot prove that age was the but-for cause of the City's decision to not promote her to the Booking Coordinator position.

Ultimately, this Court need not decide who the decisionmaker was in order to affirm the district court's decision.  As the district court correctly held, even if the panel was the decisionmaker and Luton's comment is direct evidence of discrimination, Plaintiff still cannot prove that age was the but-for cause of the City's decision to not promote her to the Booking Coordinator position.  (JA 543-49.)

"ADEA plaintiffs face a high causation burden."  *Arthur v. Pet Dairy*, 593 F. App'x 211, 219 (4th Cir. 2015) (citing *Gross*, 557 U.S. at 177-78).  Whether proceeding with direct evidence of discrimination or under the *McDonnell Douglas* framework, Plaintiff must prove by a preponderance of the evidence that age was

---

[10] Plaintiff's case is further weakened because Delano is only one year younger than her (JA 24, 100, 214 at 24:00) and a member of the same protected class. *Inguanzo v. Hous. & Servs., Inc.*, 2014 U.S. Dist. LEXIS 132197, at *55, 2014 WL 4678254 (S.D.N.Y. Sept. 19, 2014) ("[C]ourts recognize that an allegation that a decision was motivated by a discriminatory animus is weakened when a decisionmaker is a member of the same protected class as the plaintiff.") (citations omitted).

24

the "but-for" cause of the challenged employment decision. *Westmoreland*, 924

F.3d at 725 (citing *Gross*, 557 U.S. at 177-78). *See also Cole v. Family Dollar

Stores of Md., Inc.*, 811 F. App'x 168, 172 (4th Cir. 2020) ("Regardless of the

method of proof, a plaintiff retains the ultimate burden to prove by a

preponderance of the evidence that age . . . was 'the 'but-for' cause of the

challenged employer decision.'") (citations omitted). In other words, the employee

must prove that the employer would not have taken the challenged employment

action in the absence of age discrimination. *Westmoreland*, 924 F.3d at 725. The

employee must offer sufficient evidence to prove that "legitimate motivations"

were not the reason for the employer's decision. *Arthur*, 593 F. App'x at 220. "It

follows that 'direct evidence of age discrimination may not always be sufficient to

create a question of fact for trial in the ADEA context.'" *Cole*, 811 F. App'x at

175 (citation omitted). *See also Baqir v. Principi*, 434 F.3d 733, 745 (4th Cir.

2006) (affirming grant of summary judgment in direct evidence case where

employer would have taken same action even in the absence of a discriminatory

motive).

Here, even if the panel were the decisionmaker and Luton's comment is

viewed as direct evidence of discrimination, Plaintiff cannot prove that age was the

but-for cause of the City's decision to not promote her to the Booking Coordinator

position.

### 1. The City hired Lee because he was the most qualified candidate for the Booking Coordinator position.

The district court held that Plaintiff could not prove but-for causation because she "has not offered sufficient evidence for a reasonable juror to find that the Civic Center would have hired [her] over Lee had age not factored into the decision." (JA 546.) The uncontroverted evidence shows that Lee was more qualified than Plaintiff for the Booking Coordinator position, and that the City hired him because he was the superior candidate. Recently, this Court affirmed a grant of summary judgment in an ADEA case after evaluating the relative qualifications of the plaintiff and other candidates for the jobs sought by the plaintiff. *Elledge v. Lowe's Home Ctrs., LLC*, 979 F. 3d 1004, 1017-18 (4th Cir. 2020). In *Elledge*, this Court held that the "[plaintiff's] competitors each possessed certain unique qualifications that [plaintiff] lacked, qualifications it was not at all pretextual or discriminatory for Lowe's to weigh in filling the positions at issue." *Id*. at 1018. The same result should hold in this case.

As an initial matter, Plaintiff deliberately understates the Booking Coordinator's job requirements in an effort to elevate her standing as a candidate. She states that the job involves booking rooms for banquets, lunches, dinners, bridal showers and receptions. (Open. Br. at 1-2 n.1, 14 ¶ 13.) The Booking Coordinator position entails more than merely "booking banquet rooms" for prospective customers who happen to walk through the door. (*See id*.) The job

also requires "experience in event planning, marketing and advertising, sales, hotel booking, or equivalent combination of education and experience."  (JA 98.)  The job's marketing component is important.  (JA 102 ("The booking coordinator's job is to *bring in* different events, meetings, banquets, trade shows, write contracts, help coordinate events as needed to get these types of meetings here with us, basically.") (emphasis added), 104-05 (desired qualifications included "someone who was able to engage customers in a manner that would make those feel comfortable and confident in bringing business to us, and someone who could work outside of that realm to also secure people who may be interested in having larger functions which required not just simply listening to what people were asking for but taking it to that next step and looking at how they could make the event even better than what someone was bringing to us"), 120 ("It is a sales position . . . .").)  Fischer, the outgoing Booking Coordinator at the time, agreed the job entailed marketing the Civic Center and reaching out to and communicating with prospective clients.  (JA 194.)  (*See also supra* at 4-6 (Section I.A.).)

Plaintiff apparently misunderstood the job's requirements, which might explain why she believed she was equally qualified for the position.  She mistakenly believed the position required no "significant outreach" to the community to market the Civic Center.  (JA 414-15.)  For his part, Lee understood that the job involved "selling and basically marketing the rooms that the Civic

27

Center has to bring clients in . . . ." (JA 346.)  The marketing function, which

Plaintiff seemingly did not understand to be part of the job, formed one of the

bases for Delano's conclusion that Lee was the superior candidate.  (JA 119-22.)

Other reasons Delano considered Lee to be the superior candidate included

the following:

**Education.**  Lee had a bachelor's degree in Sports Business, with a minor in

Communications.  He was working on a master's degree in Executive Leadership

when he was hired.  (JA 205-06, 488-91.)  In contrast, Plaintiff had only a high

school diploma.  (JA 25.)  Delano believed Lee's education would be an asset for

the position. (JA 121-22.)

**Work Experience.**  While in college, Lee worked in sales and marketing

with area professional sports teams.  (JA 488, 490.)  He also worked for the City of

Salem Parks and Recreation Department in various capacities when he was home

during his college years.  (JA 489.)  Following graduation, he worked as an

Assistant Athletic Director for a local high school.  (JA 488-89.)  Lee's

background in sports, sales and marketing, and management and coordination was

important to Delano's decision that he was the superior candidate.  (JA 119-21.)

That Lee worked these jobs while in school also showed considerable initiative

that impressed Delano.  (JA 120-21.)  (*See also supra* at 9-12 (Section I.C.).)

Plaintiff, on the other hand, was employed in an assortment of clerical and retail jobs during her career. She was employed for approximately twelve of the thirty-four years from when she graduated high school (1984) to when she applied for the Booking Coordinator position (2019). During those twelve years of employment, she had around eight jobs, none of which lasted much more than two years and most of which lasted far less. (*See generally* JA 71, 85, 87-90, 133, 374-79, 381, 384, 385-88, 390-95.) (*See also supra* at 6-9 (Section I.B.).) Delano was concerned about Plaintiff's employment history because Delano wanted a longer-term employee. (JA 123-24.) Delano believed Lee was a better prospect in that regard. (JA 124.)

For a year and a half, in 1987 and 1988, Plaintiff did perform some Booking Coordinator functions at the Civic Center. (JA 378-79.) She did not gain any marketing experience, however. The duties she performed were consistent with the more rote tasks she mistakenly believed the current job entailed. (JA 417-19.) (*See also* Open. Br. at 1-2 n.1, 14 ¶ 13.) In any event, she had no similar experience in the over thirty years since her job at the Civic Center in the late 1980's. (JA 419-20.) More recently, she spent a year as a Box Office Cashier at the Civic Center, primarily assisting customers with seat selections and ticket sales. (JA 87, 132-33, 407-09.)

**Cover Letters, Applications, and Interviews.**  Lee's detailed cover letter explained his experience in sales and marketing.  (JA 488.)  His resume also discussed his sales, marketing, and management experience.  (JA 489-91.)

Plaintiff's cover letter, resume and application did not expound upon relevant experience for the job.  (JA 87-90, 132-33.)  In her cover letter, she merely noted that she had "past experience scheduling and booking rooms at the civic center" and understood "the ins and outs of the facility."  (JA 132.)  Her application and resume similarly reflected a dearth of experience in sales and marketing.  (JA 87-90, 133.)

Lee also had an exceptional interview.  He came across as very positive, with sharp answers that he expounded upon with ideas on how to sell the facility.  (JA 126.)  Lee also was extremely well-prepared for his interview.  (JA 122-23.)

Plaintiff did not interview as well as the other candidates.  She did not appear enthusiastic, did not appear to put forth much effort, and did not expound upon her answers to questions.  (JA 110, 112-23.)  She did not respond well to a basic question about how she would market the Civic Center.  (JA 122, 153, 155, 157.)  She did not come across as enthusiastic as other candidates.  (JA 127.)

**Candidate Ratings**.  At the end of the interview process, all three members of the interview panel considered Lee to be the best candidate.  They also considered two other candidates to have been better than Plaintiff.  (JA 199.)  One

of those candidates was older than Plaintiff.  If Lee had not been hired, at least two

other candidates would have been hired before Plaintiff got the job.  (JA 107, 109,

293, 330-32.) (*See also supra* at 12 (Section I.D.).)

 "'The rule in this circuit is that where relative qualifications are advanced as

the nondiscriminatory reason for an employment decision, the plaintiff has the

burden of establishing that she was the better applicant.'"  *Young v. Barnhart*, 52

F. App'x 191, 194 (4th Cir. 2002) (quoting *Young v. Lehman*, 748 F.2d 194, 198

(4th Cir. 1984)).  Here, no reasonable juror could find that Plaintiff was the better

applicant.  By every metric – objective and subjective – the City reasonably

concluded that Lee was the superior candidate.   Moreover, if Lee had not been

hired, two other candidates over age forty – including one who was older than

Plaintiff – would have been hired before Plaintiff.  Based on these facts, Plaintiff

cannot prove that she would have been promoted in the absence of age

discrimination.  *Westmoreland*, 924 F.3d at 725.  The district court properly held

that age was not the but-for cause of the City's decision to hire Lee and not

promote Plaintiff.

   **2. Plaintiff cannot cast doubt on the City's stated reasons for deciding to not promote her to the Booking Coordinator position.**

 Whether the case is based on direct or circumstantial evidence, a plaintiff

must present sufficient evidence to prove that the employer's proffered legitimate

motivations were not the reason for the challenged decision.  *See Arthur*, 593 F.

App'x at 220 (citing *Gross*, 557 U.S. at 176). "When evaluating cases like this on summary judgment, [the court's] focus is on whether the plaintiff has provided sufficient evidence to cast doubt upon the employer's stated reasons for the employment action, such that a reasonable juror may find age was the determinative factor in that decision." *Id*. at 221. Plaintiff's speculation and conjecture falls woefully short of meeting this "high causation burden." *Id*. at 219.

### i.     Plaintiff's failure to rebut Lee's superior qualifications

The district court noted that Plaintiff did not even grapple with the issue of how her qualifications compared to Lee's for the Booking Coordinator job. (JA 546-47.) She offered no explanation below for how she was the superior candidate, and she again has avoided the issue in her opening brief in this Court. Plaintiff merely notes that she was a reliable employee without a blemish on her record in her one year as Box Office Cashier.[11] (Open. Br. at 6, 19.) She also claims she performed some booking duties over thirty years ago while the Civic Center Secretary, a job she did not even think was important enough to list on her application or resume. (Open. Br. at 6, 14 ¶ 13.) (JA 87-90, 133, 546-47.) These

---

[11] The City does not take issue with Plaintiff's performance as the Civic Center's Box Office Cashier. (JA 111, 126.) The City concluded that Lee was a better candidate for the Booking Coordinator job.

contentions, even if true, do nothing to demonstrate that Plaintiff was a superior candidate to Lee, objectively or subjectively.

Lee's superior qualifications for the Booking Coordinator position have gone unchallenged. Plaintiff's failure to contest record evidence that demonstrates Lee's superior qualifications for the Booking Coordinator position defeats her claim and warrants affirmation of the district court's decision. *Arthur*, 593 F. App'x at 221-22. *See also Young*, 52 F. App'x at 194 ("where relative qualifications are advanced as the nondiscriminatory reason for an employment decision, the plaintiff has the burden of establishing that she was the better applicant.") (internal quotations and citation omitted).

### ii. Plaintiff's contention that Lee was not qualified for the Booking Coordinator position

While Plaintiff puts forth no effort to bolster her own credentials for the Booking Coordinator job, she does contend that Lee was not qualified because he was passed over for the job when it was open in February 2018. (Open. Br. at 2, 16.) That Lee was not selected from a different pool of candidates in early 2018 tells nothing about his candidacy stacked up against different applicants a year later. Plaintiff, after all, was not in the 2018 candidate pool. Also, Plaintiff's reliance on the 2018 rating ignores Lee's intervening year of experience as a high school Assistant Athletic Director. That year improved Lee's credentials as a job prospect, much like Plaintiff contends that her work as a Box Office Cashier over

the same year made her a better candidate (though not the best candidate). Relying

on the 2018 rating also discounts Lee's excellent interview in 2019 and his

intervening pursuit of a master's degree. The district court correctly discounted

Plaintiff's reliance on the outcome of Lee's 2018 application for the Booking

Coordinator position. (JA 549.)

### iii. Plaintiff's claim that the City is advancing *post hoc* rationalizations

Plaintiff claims that Lee's superior qualifications and Plaintiff's status as the

fourth highest ranked candidate are *post hoc* rationalizations created by the City in

the course of this litigation. (Open. Br. at 9, 17.) These claims – like most of

Plaintiff's other claims – are wholly unsupported by the record. The

contemporaneous personnel records, cover letters, resumes and applications reflect

the relative qualifications of Lee and Plaintiff. (JA 71-86, 87-90, 132-33, 488-91.)

The job description and pre-prepared interview questions demonstrate the City's

genuine interest in a candidate with sales and marketing experience. (JA 98, 141-

76.) The contemporaneous interview notes reflect the substance of the candidates'

interviews. (JA 141-76.) The post-interview recap notes reflect the rationale for

the candidate rankings. (JA 199.) The surreptitiously recorded conversation from

April 23, 2019, reveals Delano's belief that Lee was the superior candidate. (JA

214 at 9:44, 12:05.) The claim that reliance on Lee's superior qualifications and

Plaintiff's status as the fourth best candidate is a *post hoc* rationalization is spurious.

### iv.    Plaintiff's theory that Delano stacked the deck to hire Lee in 2019

Plaintiff's far-fetched theory that Delano favored hiring and promoting young men and launched a scheme in February 2018 to hire Lee for the next available position at the Civic Center fails to salvage her claim.  (Open. Br. at 1-3, 12-13.)  (JA 549.)  The theory is devoid of support in the record, and the district court found it to be "so tenuous as to amount to speculation or conjecture, and thus not useful in opposing a motion for summary judgment."  (JA 547 (quoting *Billingslea v. Astrue*, 502 F. App'x 300, 303 (4th Cir. 2012)).)  This Court similarly should reject Plaintiff's baseless contention.

Plaintiff's argument is premised on an assumption that Delano wanted to hire Lee as the Booking Coordinator in February 2018 but was unable to do so.  (*See* Open. Br. at 2 ("Things did not go as Delano had planned.").)  But there is no evidence in the record that Delano preferred Lee for the position in 2018.  Plaintiff's theory also is premised on an assumption that HR opposed hiring Lee and that Delano excluded HR from the 2019 hiring process in contravention of City policy.  (*See* Open. Br. at 2, 16.)  Again, there is no evidence in the record that HR prevented Delano from hiring Lee in 2018 or otherwise opposed his candidacy for any position.  There also is no evidence in the record that the City had any

35

policy requiring HR representatives on interview panels. Plaintiff's theory is

founded upon nothing but rank speculation.

Indeed, contrary to Plaintiff's speculative theory, department heads, such as

Delano, routinely select interview panels. (JA 362-63.) The City trains and

instructs department heads and panel members to conduct interviews in a fair and

unbiased manner. (JA 358, 363.) Interview panels without HR representatives are

not uncommon. For example, Lee was rejected for a job at the Civic Center in

November 2018 despite there being no HR representative on the panel. (JA 474-

75, 484-87.)[12] And when Plaintiff was hired in the box office in 2018, her

interview panel consisted of three Civic Center employees – Delano, Luton, and

Sowder. (JA 39-41, 96-97.) Where two panels without HR representatives

rejected Lee and hired Plaintiff in 2018, there can be no presumption that Delano

excluded HR from a panel in 2019 in furtherance of a scheme to hire Lee.

Indeed, the composition of these panels gives rise to a presumption of *non-*

*discrimination* in this case. Delano and Luton participated in the interview panel

that led to Plaintiff's being hired as a Box Office Cashier in February 2018. (JA

39-41, 96-97.) Delano and Luton also participated in the interview panels that led

to Lee's being rejected for Civic Center jobs in February 2018 and November

---

[12] The panel included Delano and Luton. Jordan mistakenly identified the third member of the panel as Chris Fischer. The third panel member actually was Clark Ruhland. Ruhland did not work in the City's HR Department.

36

2018. (JA 101-04, 474-75.) Given Delano's and Luton's participation in these interview panels when Plaintiff was hired and Lee was not, the City is entitled to a strong presumption of non-discrimination. *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) (finding that where the person who hired the plaintiff is the same individual who decided the adverse employment action, and the adverse action occurs within a relatively short time following the hiring, there is a "strong inference" that discrimination was not a determining factor for the adverse action); *see Rosenow v. CareCore Nat'l, LLC*, 2012 U.S. Dist. LEXIS 68800, at \*24, 2012 WL 1802456 (D.S.C. May 17, 2012) (finding seventeen months was a sufficiently short time span to create a strong inference that discrimination was not a determining factor in the adverse employment action).

There are numerous other flaws in Plaintiff's far-fetched theory:

1.      Plaintiff inexplicably claims that Luton and Fischer were hired before the 2018 Booking Coordinator vacancy. (Open. Br. at 1.) That is false. Fischer was hired in 2018 when Lee was first passed over for the Booking Coordinator job. (JA 481.) That Fischer was hired as Booking Coordinator in February 2018 further undermines Plaintiff's theory. It cannot be the case that Delano was so upset that she could not hire Lee as Booking Coordinator in 2018 that she launched a scheme to hire him at the next available opportunity and that Delano hired Fischer as the

Booking Coordinator in 2018 because of her predisposition to hire young men. Plaintiff's theory is internally inconsistent and absurd.

2.    Plaintiff's argument ignores the fact that HR was not excluded from the 2019 hiring process. HR screened the initial applications and advanced to Delano only those that seemed at least minimally qualified for the job. (JA 549.)

3.    Plaintiff claims that Delano launched her scheme to hire Lee in February 2018, but that she was unable to complete her plan until February 2019. (*See* Open. Br. at 12 ¶ 6-14 ¶ 12.) The argument ignores the fact that Lee applied for – but was not hired for – a Civic Center job in November 2018. (JA 484-87, 475-76.) He was not hired even though he stated in his cover letter that he was "young" and the panel that interviewed him did not have any HR representative. (JA 484, 475). (*See* Open. Br. at 13 ¶¶ 8, 10.) If Plaintiff's speculative theory carried any weight at all, Delano would have hired Lee months earlier than she did.

4.    Finally, Plaintiff's theory is based on an assumption that Delano routinely engaged in age discrimination in Civic Center hiring. There is no evidence to support that claim. Delano denied age played any role in her decision to hire Lee. (JA 119-23, 126-27, 214 at 9:44, 12:55, 23:48, 26:26.) Plaintiff agreed, conceding that she did not think Delano discriminated against her on the basis of her age. (JA 67, 214 at 24:00.) And of the approximately 250 Civic Center employees Delano supervised, Plaintiff points to the hiring of only three

"young men" – Luton, Fischer and Lee. These facts in the record do not support a claim that Delano engaged in an effort to hire young men at the Civic Center.

### v. Plaintiff's claim that Luton's comment proves discrimination

Lastly, Plaintiff contends that Luton's alleged statement that "we hired my wife's cousin; he's much younger and more energetic," (JA 58-59), constitutes direct evidence of discrimination that satisfies the burden of proving "but-for" causation. Open. Br. at 8-11.) Plaintiff is mistaken.

For the reasons discussed above, Delano was the decisionmaker behind the challenged employment decision; the interview panel was not. (*See supra* at 21-24 (Section II.B.).) Accordingly, Luton's comment is not direct evidence of discrimination.

Moreover, even if this Court views the comment as direct evidence of discrimination, it is insufficient to prove that age was the but-for cause of the City's decision to not promote Plaintiff to the Booking Coordinator position. The district court correctly held that cases involving direct evidence of discrimination are not immune from summary judgment. (JA 545 n.6.) *See Baqir*, 434 F.3d at 745 (affirming grant of summary judgment in direct evidence case where employer would have taken same action even in the absence of a discriminatory motive); *Cole*, 811 F. App'x at 175 ("It follows that 'direct evidence of age discrimination may not always be sufficient to create a question of fact for trial in the ADEA

39

context.'") (citation omitted).  Here, as discussed above, the City hired Lee because he was the superior candidate for the position.  (*See supra* at 26-31 (Section II.C.1.).)  Luton's statement does not cast doubt on the City's legitimate motivation for hiring Lee or prove that Plaintiff would have been promoted in the absence of age discrimination.

Plaintiff's reliance on *Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429 (4th Cir. 1985), to support her claim is misplaced.  (Open. Br. at 10-11.)  In *Wilhelm*, various different direct supervisors made multiple comments over a couple of years about how the defendant-company desired to replace older salesmen with younger, lower paid salesmen.  773 F.2d at 1433-34.  The plaintiffs' complaints about the improper comments were ignored.  *Id*. at 1434.  There is nothing in this case similar to the quantity of comments in *Wilhelm* demonstrating a company-wide age-based animus and effort to eliminate older employees.

Based on the evidence in the record, as opposed to Plaintiff's rank speculation, no reasonable juror could conclude that Plaintiff would have been promoted to the Booking Coordinator position in the absence of age discrimination.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's decision.

40

Respectfully submitted,


By:  */s/ Jeremy E. Carroll*
      Jeremy E. Carroll
      Guynn, Waddell, Carroll & Lockaby, P.C.
      415 South College Avenue
      Salem, Virginia 24153
      540-387-2320 (Telephone)
      540-389-2350 (Facsimile)
      jeremyc@guynnwaddell.com

      *Counsel for Defendant/Appellee*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App.
    32(a)(7)(B) because:

    The word count of this brief is <u>9,789</u>.

2.  This brief complies with the typeface requirements of Fed. R. App. P.
    32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    This brief has been prepared in a proportionally spaced typeface using
    Microsoft Word, Times New Roman, 14 point.


Dated:  December 20, 2021               */s/ Jeremy E. Carroll*
                                        Jeremy E. Carroll

42