**RECORD NO. 21-1565**

In The

# United States Court Of Appeals

### For The Fourth Circuit

**TAMMY BANDY,**

*Plaintiff - Appellant,*

v.

**CITY OF SALEM, VIRGINIA,**

*Defendant - Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT ROANOKE**

_____

**REPLY BRIEF OF APPELLANT**

_____

**Terry N. Grimes**
**TERRY N. GRIMES, ESQ., PC**
**320 Elm Avenue, SW**
**Roanoke, VA  24016**
**(540) 982-3711**
**tgrimes@terryngrimes.com**

*Counsel for Appellant*

# **TABLE OF CONTENTS**

Page:

TABLE OF AUTHORITIES ................................................................................... ii

ARGUMENT .............................................................................................................1

    I.    The central premise of the City's position on brief — that "the uncontroverted evidence [shows] that Civic Center Director Wendy Delano made the decision to hire Jefferson Lee" — is false...................................................................................................1

        A.    The evidence supports a finding that the panel members — Wendy Delano, Hank Luton and Chris Fischer — were all involved in the hiring process ..................................................1

        B.    There is evidence that age discrimination played a role in Wendy Delano's individual decision as well..............................4

        C.    As to relative qualifications, the City on brief ignores the fact that Delano *never* told Bandy that she was not qualified for the job or that her education was inadequate .........4

        D.    Bandy is entitled to an inference of discrimination ....................6

        E.    The inference of age discrimination is strengthened by the City's reliance on subjective criteria ..........................................6

        F.    Additional evidence exists to support a finding of age discrimination........................................................................8

CONCLUSION........................................................................................................14

CERTIFICATE OF COMPLIANCE......................................................................15

# TABLE OF AUTHORITIES

Page(s):

**Cases:**

*Arthur v. Pet Dairy*,
    593 F. App'x 211 (4th Cir. 2015) (unpubl.) ................................................... 11

*Billingslea v. Astrue*,
    502 F. App'x 300 (4th Cir. 2012) (unpubl.) ............................................. 11, 12

*Cole v. Family Dollar Stores of Md., Inc.*,
    811 F. App'x 168 (4th Cir. 2020) (unpubl.) ................................................... 11

*Elledge v. Lowe's Home Ctrs., LLC*,
    979 F.3d 1004 (4th Cir. 2020) ....................................................................... 13

*Figueroa v. Pompeo*,
    923 F.3d 1078 (D.C. Cir. 2019) ....................................................................... 7

*Reeves v. Sanderson Plumbing Prods.*,
    530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ............................. 6

*St. Mary's Honor Center v. Hicks*,
    509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) ............................. 6

*Young v. Barnhart*,
    52 F. App'x 191 (4th Cir. 2002) (unpubl.) ..................................................... 11

*Young v. Lehman*,
    748 F.2d 194 (4th Cir. 1984) ......................................................................... 11

**Other Authorities:**

Bell, Daniel L. (1989)
    *Watson and Subjective Hiring Practices: The Continuing Saga of Industrial Psychology, Title VII and Personnel Selection*, Akron Law Review 588, Vol. 22, Issue 4, Article 5 ........................................................ 7

Webster's New Collegiate Dictionary, G. & C. Merriam Co. (1979) ..................... 2

Appellant Tammy Bandy responds to appellee City of Salem, Virginia's brief, as follows:

## ARGUMENT

**I.  The central premise of the City's position on brief — that "the uncontroverted evidence [shows] that Civic Center Director Wendy Delano made the decision to hire Jefferson Lee" — is false.**

The lynchpin of the City's argument on brief — that "the uncontroverted evidence [shows] that Civic Center Director Wendy Delano made the decision to hire Jefferson Lee" (ECF 16 at 8) — is false.[1] To the contrary, the evidence in question is plainly in controversy and supports a finding that Delano did not act alone.

**A.  The evidence supports a finding that the panel members — Wendy Delano, Hank Luton and Chris Fischer — were all involved in the hiring process.**

The record establishes that the interview panel consisted of three persons (Wendy Delano, Hank Luton and Chris Fischer) — all of whom were selected personally by Delano, and that all were involved in the hiring process:

> Q    I want to ask you about the hiring process for the booking coordinator position. *Who was involved in the hiring process?*
> A    *Myself, Hank Luton, and Chris Fischer.*
> Q    And who decided who would be involved in the hiring process?
> A    I did.

(JA 226-27) [Emphasis added].

---

[1] So foundational is the point to the City's defense that it raises the point more than 30 times on brief. *See* ECF 16 at 1 – 3, 12, 15, 17, 21 – 24, 28 – 29, and 39.

1

In addition, when asked whether the candidates for the position were ranked, Delano answered, "[n]ot formally, but after the interview, *we* did rank them informally, just to try to get a feel for who *we* felt were the best candidates."[2] (JA 109) [emphasis added]. Delano's use of "we" when speaking about who was involved in the hiring process rather than the singular "I" is telling. She could have just as easily said "*I* ranked the candidates" or "*I* got a feel for who *I* felt were the best candidates"—but she did not, for the hiring decision was a joint one made by the panel, and from this evidence a jury could so find. The fact that Delano may have given different answers at different times with respect to her involvement in the process merely means that the jury must determine when she was telling the truth, and when she was not.

Moreover, one of the panelists (Luton) told Bandy outright that although her interview went well, "*we*" hired Jefferson Lee "*because* he is much younger and more energetic." (JA 429, 483, 536). The statement is probative of the panel's mindset and could not have been clearer. Further, the City ignores the fact that Delano told Bandy regarding Luton's comment that "to be honest with you, that was probably his honest answer—in his mind … I mean there is no doubt in my mind that what you told me is what—that's probably how he felt." (JA 214, at 18:49). Truer words were never spoken.

---

[2] "We" is defined as "I and the rest of a group that includes me." Webster's New Collegiate Dictionary, G. & C. Merriam Co. (1979).

2

Thus, the district court below properly found that "[t]aking the facts in the light most favorable to the non-movant, a reasonable jury could conclude that the interview committee, which included Luton, was principally responsible for the hiring decision and, therefore, the actual decisionmaker—not just Delano." (JA 541) (*see also* JA 543: "The record gives mixed signals as to who was the actual decisionmaker.")

Next, the district court also found that "there is no genuine dispute that Luton's comment was related to Bandy's age, proximate in time to Salem's decision to hire Lee over Bandy, and related to the employment decision at issue" (ECF 45 at 13-14), and the district court stated that it would therefore "treat Luton's derogatory comment as direct evidence of age discrimination on summary judgment." (ECF 45 at 14). The City's assertion that the evidence as to who made the decision to reject Bandy is uncontroverted is therefore without merit (and, the City could have challenged the point by cross-appeal, but did not).

The point is important for several reasons. First, the fact that the City emphasizes that Delano was the sole decision-maker more than 30 times on brief means that the City plainly recognizes that the question is a critical one: if the evidence as to who made the decision not to promote Bandy is in controversy, and if direct evidence of discrimination exists, then this case must go to the jury. For this reason alone, the judgment of the district court should be reversed. Moreover, the City's argument

3

highlights the fact that at every turn, the City has presented the evidence in the light most favorable to it, not Bandy, in patent contravention of Rule 56 and well-established jurisprudence.

    **B.    There is evidence that age discrimination played a role in Wendy Delano's individual decision as well.**

While it is clear that the three members of the Panel made the hiring decision together, there is also evidence that age played a role in Delano's individual decision, a fact which the City attempts to minimize on brief. As stated in Bandy's opening brief, the case presents circumstantial evidence of age discrimination, including (1) the undisputed fact that Delano preferred to have young men under her in management, including Luton (age 38), Fischer (age 39) and Lee (age 22); (2) Delano's intentional exclusion of HR from the Booking Coordinator interview committee (thus stacking the deck to permit Lee's hiring); and (3) Delano's surprise and awkwardness response to Bandy's expression of interest in the position, no doubt because Delano already knew precisely who she wanted to hire (Appellant's Op. Br. at 12, citing (JA 544)). *See also*, Appellant's Op. Br. at 12 – 15).

    **C.    As to relative qualifications, the City on brief ignores the fact that Delano *never* told Bandy that she was not qualified for the job or that her education was inadequate.**

Despite what the City now argues on brief with the benefit of hindsight, neither Delano nor anyone else ever told Bandy that she was not qualified for the job. To the contrary, at the time the decision was made, Delano told Bandy that she did not

4

get the job because she (1) had done the job before (Bandy had performed the booking coordinator duties previously while working for then Civic Center Director Carey Harveycutter) (JA 377-79, 434); (2) had proven to be a reliable employee; (3) had shown that she could learn different computer programs since she had learned the Ticketmaster program at the civic center; (4) that the civic center would not want her to have the job because she already worked there; and (5) that they had received 30 applications, interviewed only six persons including Bandy, and that Bandy was only one of four persons with the proper skill set. (JA 446-47). Delano's explanation made as little sense then as it does now, and Bandy was dumbfounded because those should have been reasons to hire her, not Lee, as booking coordinator. (JA 447).

Next with respect to education, although the City touts Lee's education on brief (Def. Br. at 28), Delano told Bandy plainly at the time that education had nothing to do with the reason Lee was hired: "[y]es, he has a sports degree, but that doesn't, *that's not the reason why he got hired*." (Def. Br. at 15) [Emphasis added]. Thus, with relative qualifications and education eliminated as reasons for the hiring decision, and with direct evidence of discrimination always present, the evidence points toward age as a but-for reason for the decision in question, and a jury could so find based on this evidence.

5

### D. Bandy is entitled to an inference of discrimination.

Under *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 517, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) ("Proving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination"). "In appropriate circumstances, the trier of fact can reasonably *infer* from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an *inference* is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" (internal cites omitted). The inference of discrimination in this case is also sufficient to overcome summary judgment.

### E. The inference of age discrimination is strengthened by the City's reliance on subjective criteria.

Next, the City's reliance on subjective criteria during the hiring process — a point ignored by the City on brief — only strengthens the inference of discrimination. With respect to the district court's observation that the City claimed that Bandy's interview was "lackluster," that her "answers were short," and that she showed "little

6

enthusiasm for the job," (JA 534) and that in contrast, Lee was "very positive," had "sharp answers" and was "enthusiastic," (JA 535), first, the district court overlooked the fact that after the interview, Luton approached Bandy and told her that she did a "*great job* in the interview." (JA 428) [Emphasis added]. Thus, a question of fact exists concerning Bandy's performance during the interview which cannot be resolved on summary judgment. Next, the City concedes its reliance on subjective criteria on brief and notes that Lee had "an exceptional interview," "came across as very positive," and gave "sharp answers," while Bandy "did not appear enthusiastic" and did not put forth "much effort." (ECF 16, at 30).

It is difficult to imagine more subjective criteria. Courts have long-recognized that subjective criteria are often used to mask discrimination in employment. *E.g.,* Bell, Daniel L. (1989) *Watson and Subjective Hiring Practices: The Continuing Saga of Industrial Psychology, Title VII and Personnel Selection*, Akron Law Review 588, Vol. 22, Issue 4, Article 5. Similarly, in *Figueroa v. Pompeo*, 923 F.3d 1078 (D.C. Cir. 2019), a foreign services officer for the State Department in Puerto Rico filed suit *pro se* alleging that he was denied promotional opportunities due to his Hispanic ethnicity. The appeals court said the State Department listed vague promotional criteria, many purely speculative, in refusing to promote Figueroa, including leadership skills, managerial skills, interpersonal skills, communication and foreign language skills, intellectual skills and substantive knowledge. The State

7

Department also submitted declarations from managers stating that they applied the criteria in considering the promotion.

On appeal, the D. C. Circuit reversed the lower court's dismissal of Figueroa's discrimination claim and stated that "[f]ailing to provide such detail — that is, offering a vague reason — is the equivalent of offering no reason at all." *Id.*, at 1092. The court also stated that plaintiffs "lack the resources (and the clairvoyance) to guess at how their respective decision-makers interpreted the criteria to explain away each standard at trial. We also expect that no reasonable jury would accept a vague and slippery explanation." *Id.*, at 1088. For similar reasons, the jury here may find that the subjective criteria in the case at bar were used to mask discriminatory animus.

### F. Additional evidence exists to support a finding of age discrimination.

As stated, about a year before Lee was hired, the City found that he did not meet even the *minimum* qualifications for employment. (JA 354).³ The very next time he applied, he emphasized in his cover letter that he was "young" and was hired.

The City's attempt on brief to paint Lee as superior to Bandy reeks of discrimination and pretext. This is especially evident in the way the City describes each candidate's work history. For example, in an attempt to minimize Bandy's

---

³ The City's laundry list of persons involved in the hiring process (ECF 16 at 36 n. 12) lacks reference to the record.

8

accomplishments and present her as having had a negative work history, the City states that Bandy worked an "assortment" of jobs and was only "employed for approximately twelve of the thirty-four years from when she graduated high school" and that "none [of her] jobs lasted much more than two years (Brief of Appellee at 29). In contrast, the City states in a *positive* way that "Jefferson [Lee] showed a lot of initiative in the fact that he worked a lot of different jobs and interned and did various other functions outside of going to school." (Brief of Appellee at 16). The City also states regarding Lee's supposedly superior qualifications that Lee did some short-term work with the Parks and Recs department "when he was home during college years" and that "he worked as an Assistant Athletic Director for a local high school." The City also states on brief that "Delano was concerned about Plaintiff's employment history because Delano wanted a longer-term employee. Delano believed Lee was a better prospect in that regard." (*Id*.). Inexplicably, the City fails to explain why short-term or part-time work is viewed as positive for Lee but negative for Bandy. This disparate treatment of Lee and Bandy is further evidence of discrimination. Moreover, the City makes no mention of that fact that Jefferson Lee had not worked consistently at any full-time jobs for longer than two years and that Lee had not nearly the number of years in the workforce that the City attributes to Bandy. The City essentially argues that Lee having almost no work history is somehow superior to Bandy having had 12 years of work history and concludes

9

without reason that Lee was thus somehow a better long-term employee prospect. It is not that Lee has had a better or more impressive history than Bandy; it is that he has had a shorter one. The disparate treatment of Lee and Bandy in the City's post-hoc analysis is glaring. The jury may well see through this ruse and find that the real difference between Lee and Bandy is indeed age.

Next, in its opinion, the district court notes that even if Lee was not offered the job, the job would still have not gone to Bandy, and that the job instead would have gone to another candidate whom the interview committee believed to be more qualified than Bandy. (*See e.g.*, ECF 45 at 17). According to Delano, this is simply not true,

> There was a lady who interviewed for the position with you guys. All she has ever done is book rooms, meetings, conventions, she had exactly the knowledge and would have been a shoe-in and would take off running. She was out of all of you guys—just gave a great interview. I didn't feel comfortable putting her in for a couple reasons. And I'll share this with you… This lady – and I'll share with you – didn't make the cut…*because I felt she would be overpowering the dynamic that we currently have. She had the most experience.* She should have just been given the job. She wanted more money. That was a big factor for her as well. And I didn't think we could pay her what she deserves to be paid. *So she sort of eliminated herself in that process.* And there were a couple other interviews and reasons why they were not hired.

(JA 214, at 13:04). [Emphasis added]. Delano's concern that this older candidate "had the most experience" but that Delano was not "comfortable putting her in" because she may "overpower[ ] the dynamic that we currently have" reflects Delano's

10

use of subjective hiring criteria and that Delano was not in the least interested in hiring the most qualified candidate. Delano wanted who she wanted, and she wanted 22-year old Jefferson Lee. Given the dissembling, pretext, suggestive criteria and inconsistencies in the evidence, it cannot be said as a matter of law that Bandy would not have been promoted even if Jefferson Lee been removed from the mix. And, it is worth noting that the persons who evaluated the candidates were the very persons who harbored animus toward older workers, so naturally Bandy and the older applicants would be expected to score lower. Further, if Delano really wanted someone who would stick around and be content with booking banquet rooms at the Civic Center, the City may well have hired someone who really wanted the job, like Bandy, as opposed to someone who, like Lee, would foreseeably work a short while to pad his resume then move on to greener pastures, which in fact is exactly what happened.

Finally, the City's erroneous conclusions on brief may have been informed by its heavy reliance on unpublished opinions, including *Arthur v. Pet Dairy*, 593 F. App'x 211 (4th Cir. 2015) (unpubl.), cited at 24 – 25, 31 – 33, *Billingslea v. Astrue*, 502 F. App'x 300 (4th Cir. 2012) (unpubl.), cited at 35, *Cole v. Family Dollar Stores of Md., Inc.*, 811 F. App'x 168 (4th Cir. 2020) (unpubl.), cited at 25, 39 – 40, and *Young v. Barnhart*, 52 F. App'x 191 (4th Cir. 2002) (unpubl.), cited at 31, 33, which are relegated to their facts and have no precedential value. *Arthur* and *Cole* are discussed in Bandy's Opening Brief (at 18 – 19). The remaining cases are inapt.

11

*Billingslea* — an unpublished *per curiam* opinion (cited on brief by the City at 35) — is inapt because there is no need to resort to "speculation or conjecture" as to the employer's motivation for the hiring decision when Luton told Bandy plainly that "*we*" hired Jefferson Lee "because he is much younger and more energetic." *Young* — another unpublished *per curiam* opinion (cited on brief by the City at 31, 33) — cites a previous opinion of this Court, *Young v. Lehman*, 748 F.2d 194 (4th Cir. 1984). *Lehman* is instructive here.

In *Lehman*, when it was discovered that the interview panel chairman noted with respect to an applicant, "'My guess she's black,'" the reviewer concluded "that the panel's work was improper" and recommended "that the Navy reject the recommendations and form a new panel." An EEO official also found "evidence of improper racial consideration sufficient to warrant a new selection panel." As a result, "[a] new panel was then formed." The new, unbiased panel, rejected Young, "who ranked sixth out of eight applicants," in favor of another applicant. *Id*., at 196.

The process employed by the Navy in *Lehman* is exactly what the City should have done here. When the Navy learned that the hiring process was infected with race bias, it immediately rejected the recommendation and formed a new panel. Similarly, when Delano learned that Luton told Bandy plainly that "*we*" hired Jefferson Lee "because he is much younger and more energetic," she should have immediately concluded that the decision was the product of age bias and vacated the

12

decision and formed an unbiased panel to interview the applicants. The City would have unquestionably supported this decision, for both HR Director Beth Rodgers and Assistant Director Kristie Jordan testified that the hiring process for the City of Salem is supposed to be fair and unbiased (JA 357; JA 459-60). Bandy would then have had a level playing field and the opportunity to interview with a panel free from age bias.

Finally, *Elledge v. Lowe's Home Ctrs., LLC*, 979 F.3d 1004 (4th Cir. 2020), cited by the City on brief at 26, is not instructive. There, following knee surgery, Elledge was unable to perform his job duties. As a result, he retired and accepted a severance package while simultaneously applying for two director-level jobs, then sued under the ADA and ADEA when he did not get them. On appeal, this Court noted that "in order to prove a prima facie case that a removal violated the ADEA, Elledge must show inter alia that he was qualified for his job." *Id*., at 1018. As "Elledge was not able to perform the essential functions of his MDS job with or without reasonable accommodations," this Court concluded that summary judgment for the employer was appropriate and affirmed the judgment of the district court. As there is no allegation here that Bandy could not perform the essential functions of the job with or without reasonable accommodations, *Elledge* is therefore inapt.

13

## **CONCLUSION**

For the reasons stated here and in the opening brief, Bandy requests that this Court reverse the award of summary judgment and remand this case for further proceedings.

Respectfully Submitted,

TAMMY BANDY

*/s/ Terry N. Grimes*
Terry N. Grimes, Esq. (VSB No. 24127)
TERRY N. GRIMES, ESQ., P.C.
320 Elm Avenue, S.W.
Roanoke, VA 24016
TELEPHONE: (540) 982-3711
FACSIMILE: (540) 345-6572
tgrimes@terryngrimes.com

*Counsel for Appellant*

# **CERTIFICATE OF COMPLIANCE**

1. This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments): this document contains <u>3,421</u> words.

2. This document complies with the typeface requirements because:

   This document has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

Dated: January 6, 2022                     */s/ Terry N. Grimes*
                                           Terry N. Grimes, Esq. (VSB No. 24127)
                                           TERRY N. GRIMES, ESQ., P.C.
                                           320 Elm Avenue, S.W.
                                           Roanoke, Virginia 24016
                                           TELEPHONE: (540) 982-3711
                                           FACSIMILE: (540) 345-6572
                                           tgrimes@terryngrimes.com

                                           *Counsel for Appellant*